**Herbert G. SCHWARZ, dba Ski Imports**

v.

**UNITED STATES.**

C.D. 3447; Protests Nos. 67/1787–88672, etc.

United States Customs Court,
Second Division.
May 8, 1968.

Stein & Shostak, Los Angeles, Cal., (Leonard M. Fertman and S. Richard Shostak, Los Angeles, Cal., of counsel) for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen., (Morris Braverman, New York City, trial atty.), for defendant.

Before RAO, FORD, and BECKWORTH, Judges.

BECKWORTH, Judge:

The merchandise involved in these cases, consolidated at the trial, consists of luggage racks and ski carriers imported from West Germany and entered at the port of Los Angeles-Long Beach in 1965 and 1966. It was assessed with duty at 19 per centum ad valorem under item 657.20 of the Tariff Schedules of the United States, as articles of iron or steel, not coated or plated with precious metal, other. It is claimed that the merchandise is properly dutiable at 8½ per centum ad valorem under item 647.01 of the Tariff Schedules, as amended by the Tariff Schedules Technical Amendments Act of 1965, as fittings and mountings designed for motor

vehicles. Other claims have been abandoned and are hereby dismissed.

The pertinent provisions of schedule 6 of the Tariff Schedules of the United States, as amended, are as follows:

*Subpart G headnotes:*

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\*　\*　\*　\*　\*　\*

Articles of iron or steel, not coated or plated with precious metal:

\*　\*　\*　\*　\*　\*

Other articles:

\*　\*　\*　\*　\*　\*

657.20 Other . . . 19% ad val.

\*　\*　\*　\*　\*　\*

Hinges; and fittings and mountings not specially provided for, suitable for furniture, doors, windows, blinds, staircases, luggage, vehicle coach work, caskets, cabinets, and similar uses; all the foregoing, of base metal, whether or not coated or plated with precious metal:

Not coated or plated with precious metal;

\*　\*　\*　\*　\*　\*

Of iron or steel, \* \* \*:

647.01 Hinges, fittings, and mountings, designed for motor vehicles . . 8.5% ad val.

At the trial, plaintiff called two witnesses and introduced 5 exhibits.

Herbert George Schwarz, an importer of sporting goods and car accessories for 15 years, testified that he sells such merchandise all over the United States. He identified the exhibits as follows:

Exhibit 1 is a combination ski and luggage rack used on Porsche model 356 automobiles. Such merchandise is covered by protest 67/19999 and is designated on the invoice as type L 303.

Exhibit 2 is a ski carrier designed for all models of Volkswagen automobiles. Such merchandise is covered by protest 67/1787 and is designated on the invoices as W 4 L.

Exhibit 3 is a ski carrier designed for carrying skis on any automobile that has a rain gutter. Such merchandise is covered by protest 67/1787 and is designated on the invoice as SL.

Exhibit 4 is a ski carrier designed for Volkswagen automobiles. It is covered by protest 67/4416 and is designated on the invoice as number 4078.

Exhibit 5 consists of catalogue sheets from a brochure covering automotive products, issued in October 1966 by Herbert G. Schwarz Imports, depicting exhibits 1 through 4 as they appear when attached to an automobile.

Mr. Schwarz testified that his firm has been importing these items for 10 or 15 years in quantities of 2,400 a year. It sells them to dealers and distributors of motor cars, in all 50 States, especially to Volkswagen Pacific in Los Angeles and a Division of Porsche Pacific in Los Angeles and Culver City. Orders are received by mail or phone and sales are also made by about eight salesmen who travel to various places.

The merchandise is offered to the trade as ski carriers or luggage carriers, and Mr. Schwarz considered them fittings or mountings for automobiles. Exhibits 1, 2, and 4 are designed for either the Volkswagen or the Porsche automobile, and exhibit 3 will fit any hardtop automobile with a rain gutter.

Mr. Schwarz testified that he had seen these items installed on motor vehicles and had installed about 50 himself. He said that exhibit 1 is attached to the automobile by means of bolts which go through the holes at the base of the luggage carrier and into four threaded holes which have been provided on the automobile by the manufacturer for the installation of the luggage and ski carrier. Skis are attached by laying them across the rack on the plastic pads provided therefor and tightening the straps. Luggage is supported by a piece that extends above the rack to prevent anything from falling off. Four hooks are provided to attach straps around the luggage.

Mr. Schwarz stated that a luggage rack is a fitting installed onto an automobile to carry luggage and that a ski rack is a fitting to carry skis. They are mounted on the car itself by means of bolts or wing nuts. They can be left on the automobiles all year round at the option of the consumer. He said most people keep them on all year round, particularly the ski and luggage rack, which is used in winter for skis and in summer for luggage, or sleeping bags.

Exhibit 2 is attached by two bolts on the top of the item and one bolt at the bottom. The same bolt holds the bumper to the vehicle. Installation is a very simple operation, taking about 4 or 5 minutes. The witness considered the installation to be permanent.

The trial judge read to the witness from Webster's Seventh New Collegiate Dictionary the following definitions:

fitting: a small, often standardized, accessory part

mounting: a frame or support; an undercarriage or part that fits a device or use, or attaches an accessory.

The witness stated that he agreed with those definitions and that in his opinion the merchandise before the court fell within them; that he considered such merchandise to be fittings and mountings.

Plaintiff's second witness was George A. Holcomb, purchasing representative for Porsche Car Distributors, the distributor and importer of Porsche automobiles in California, southern Nevada, and Arizona. He had held that position for 6 months and for 14 months prior thereto had been field representative for the same firm. He had been parts manager for Vasek-Polak, the Porsche dealer in Manhattan Beach for 6 years; parts and service manager for El Centro Imports, a Volkswagen dealer for 2 years, and an aircraft mechanic for about 18 years.

Mr. Holcomb had installed or supervised the installation of articles like exhibits 1, 2, and 3 on many occasions. He said that exhibit 1 is attached to the engine compartment door of certain models of Porsche automobiles. He explained that the manufacturer provides brackets in the engine door mounting to accept the bolts that come with the ski and luggage carrier. Exhibit 2 is attached to the Volkswagen grill which allows air to enter the rear compartment to cool the engine. Little nuts are provided on the bottom of the ski carrier to go through the slots in the grill and tighten down the bottom surface of the grill. Another portion of the carrier attaches to the bumper to provide a place for the heel of the skis to rest while they are being supported on the ski carrier. Exhibit 3 is attached by assembling it, putting the feet on the rain gutter of the roof panel and tightening a hook that goes around underneath the rain gutter with a wing nut. While the witness had never installed exhibit 4, he believed it would be attached quite similarly to exhibit 2. He said that exhibit 2 provided for the carrying of one or two pair of skis but that exhibit 4 had provisions for carrying twice that number.

Mr. Holcomb agreed with the definitions of fitting and mounting, supra, and said that he considered the ski-luggage rack itself a mounting and the hardware used to attach it to the vehicle fittings.

The witness said he had been in the automobile business since 1958 and had become familiar with fittings and mountings both as a mechanic and as a dealer in parts. In his opinion the dictionary definitions, supra, conform to the definitions of fitting and mounting as known in the industry. Once attached to a vehicle he considered the articles at bar a permanent part or an integral part of the vehicle because they were affixed in a more or less permanent manner. He admitted they could be easily removed.

The witness said he purchased item 1 and item 3 as accessories to be attached to Porsche vehicles. He also purchased other accessories such as electric

pneumatic air horns, coco mats and rugs, radios, wheel embellishers, and other artices that are attached to improve the appearance of the car. Except for the radio, he considered them to be fittings and mountings. He said an ashtray was a fitting or mounting in the broadest definition, but that a door handle was a part of the car. He deals with fittings and mountings such as plumbing devices used in and around the engine, engine mounts, transmission mounts, axle mounts, and items that attach to the various major components of the basic vehicle. He would not call an engine mount an accessory.

The question before the court is whether these luggage racks and ski carriers are fittings and mountings within the meaning of item 647.01, supra.

The Tariff Schedules of the United States, as originally enacted, did not incude the present item 647.01. It did, however, have the same superior heading covering fittings and mountings suitable for furniture, doors, windows, blinds, staircases, luggage, vehicle coachwork, caskets, and cabinets. In the case of the type of merchandise at bar, the fittings and mountings covered were those suitable for "vehicle coach work."

The Tariff Classification Study of November 15, 1960, does not elaborate on the items intended to be covered by the superior heading but states that they are articles of base metal and that most of them were classifiable under paragraph 397 of the Tariff Act of 1930.

The superior heading appears to have been derived in part from item 83.02 of the Nomenclature for the Classification of Goods in Customs Tariffs, generally known as the Brussels Nomenclature, which provides:

  83.02  Base metal fittings and mountings of a kind suitable for furniture, doors, staircases, windows, blinds, coachwork, saddlery, trunks, caskets, and the like (including automatic doors closers); base metal hat-

racks, hat-pegs, brackets and the like.

In the explanatory notes to the Brussels Nomenclature (vol. II, p. 754), it is stated that the heading covers general purpose classes of base metal accessory fittings and mountings such as are used on furniture, doors, windows, and coachwork. Included are:

(D) Fittings for all types of vehicle coachwork (e. g., for rolling-stock, automobiles, trailers or horse carts), not being parts or accessories falling within Section XVII. for example:—made-up ornamental beading strips; foot rests; grip bars, rails and handles; fittings for blinds (rods, brackets, fastening fittings, spring mechanisms, etc.); luggage racks for interiors of railway compartments, road coaches, etc.; hood hinges; window opening mechanisms; ash trays specialised for mounting in coachwork; tail-board fastening fittings; fittings for horse-drawn vehicles (e. g., whip sockets, lamp brackets and holders).

Parts and accessories of motor vehicles are provided for by the Brussels Nomenclature in item 87.06, and the explanatory notes include thereunder exterior luggage racks. Thus, the Brussels Nomenclature, insofar as it is a guide to the intent of the tariff schedules, is an indication that luggage and ski racks are not covered by the provision for fittings and mountings suitable for coachwork.

Item 647.01, supra, providing for fittings and mountings designed for motor vehicles, was added by the Tariff Schedules Technical Amendments Act of 1965, under the superior heading discussed above. The item is included under a section headed "AUTOMOBILE, ETC., PARTS." When the bill (H.R. 7969) was before the House of Representatives, the Committee on Ways and Means issued a report (House Report No. 342 of May 12, 1965) stating that said sec-

tion involved a number of classes of articles which, although known by more specific names and designations, were commonly referred to as parts of articles.

After referring to the submitting report of the Tariff Classification Study, page 19, on the provisions for "parts" in the tariff schedules, it states that some of the specific provisions for "parts" in the tariff schedules were carried over from similar provisions in the old act, but that many were derived from fragments of a number of "parts" provisions and reflected rates of duty which were estimated weighted averages of the complex rates previously applicable. The report continues (p. 23):

It now appears in the light of more complete data available that certain of the estimated weighted average rates of duty in the tariff schedules of the United States should be changed:

(a) Hinges and fittings, etc.—Subsection (a) of section 30 repeals item 647.00 and in effect divides its former scope into two parts with new item 647.01, re-establishing the former rate of duty (8.5 percent ad valorem) imposed under paragraph 369(c) for hinges, fittings, and mountings, designed for motor vehicles. It was found that there is quite a substantial import trade in such articles. Included herein are such articles as special types of hinges for trunk lids, doors, windows, hoods, and glove compartments, covertible top supports, window regulator escutcheons, window channels, dashboard trim, and interior and exterior trim.

It is evident from this report that it was not the intention of the Committee to enlarge or change the scope of former item 647.00 but to divide it into two parts with a lower rate for such motor vehicle fittings and mountings as had been previously covered. The report of the Senate Committee on Finance states that it accepted this provision of the House bill. (Senate Report No. 530 of August 2, 1965, p. 28). It thus appears

that Congress intended that the fittings and mountings covered by the new item 647.01 should be such articles as go into and become a part of a motor vehicle coach and were formerly provided for in paragraph 369(c) of the Tariff Act of 1930, as parts of automobiles, chassis, or bodies.

As an aid to the construction of the tariff schedules, the General Interpretative Rules provide, inter alia:

\* \* \* \* \* \*

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

(1) a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby;

\* \* \* \* \* \*

In accord with the spirit of these rules, item 647.01, supra, is also to be construed as applying only to fittings and mountings designed and suitable for coachwork on motor vehicles.

The ski and luggage carriers at bar may well be fittings and mountings in the sense that they are accessories or supports but they are not parts of automobiles or automobile bodies as the term part is construed in tariff statutes.

In Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849, the court pointed out (pp. 13–14):

\* \* \* whether a given article constitutes a part of another article depends upon the nature of the so-called part and, we might add, to some degree on the function and purpose of the so-called part in its relation to the article to which it attaches or with which it is designed to serve.

It there held that an auxiliary heater which was optional equipment for a Volkswagen automobile was a part of an automobile on the ground that it contributed to the safe and efficient opera-

tion of the vehicle in frigid temperatures in relation to the comfort of the occupants and in aid of the safety factor of vision by assisting in the removal of ice from the windshield.

In United States v. Pompeo, 43 CCPA 9, C.A.D. 602, it was held that supercharges which were optional equipment were parts of automobiles, on the ground that when installed, they became integral, constituent, and component parts without which the motors would not function.

In United States v. Cody Manufacturing Co., Inc. et al., 44 CCPA 67, C.A.D. 639, in the course of discussing cases on "parts", the court quoted from Peter J. Schweitzer, Inc. v. United States, 16 Ct.Cust.Appls. 285, T.D. 42872, as follows:

So it may be said that whether an article is an accessory or an integral part of a machine depends, to a considerable extent, upon its use. If its use is casual, auxiliary or optional it is an accessory. If, however, it is used as an essential part, and if the machine is *incapable of performing its ordinary and proper functions without it,* it will be considered, at least for tariff purposes, as an integral part of the machine. [Italics quoted.]

In The Westfield Manufacturing Company v. United States (Korlis, Limited, Party in Interest), 46 Cust.Ct. 52, C.D. 2232, affirmed sub nom., United States (Korlis Ltd., Party in Interest) v. Westfield Manufacturing Company, 49 CCPA 96, C.A.D. 803, it was held that luggage racks were accessories for bicycles and not parts thereof. The court stated (p. 57):

\* \* \* It is uncontroverted that they serve no purpose in the operation of a bicycle and that bicycles can, and do, function safely and efficiently without them, in the manner for which they are normally designed. Luggage carriers are clearly items enhancing the attractiveness, and, perhaps even the convenience of a bicycle, but having no effect upon its performance. Since a bicycle is complete in every respect without the attachment of a luggage carrier, the latter is obviously no more than an accessory, specifically excluded from the weight of the bicycle by the language of the trade agreement provision.

In Gallagher & Ascher Company v. United States, 54 Cust.Ct. 141, C.D. 2522, it was held that lock cylinders which were parts of automobile gas tank covers were parts of automobiles on the ground that the gas tank of an automobile requires a cover for the safe and efficient operation of the automobile and that when the owner elects to use a cover of the locking type, it becomes a part of the article for which it was designed and intended to be used.

The ski and luggage carriers in the instant case contribute in no way to the safe and efficient operation of the automobile. While said to be "permanently" attached, it is clear that they are easily removable, and that such removal would not affect the functioning of the motor vehicle in any way. Furthermore, they do not contribute to the functioning of the vehicle coach itself, such as hinges and door handles do, nor to the enhancement of the appearance thereof, such as exterior or interior trim.

While some of the articles mentioned in the report of the House Ways and Means Committee, supra, do not have anything to do with the operation of the motor vehicle, such as dashboard and interior and exterior trim, those items are a permanent part of the vehicle coach, improve its appearance, and may properly be considered suitable for vehicle coachwork. Neither of the witnesses testified as to the meaning of the term "vehicle coach work", but the examples cited in the House Committee report and the explanatory notes to the Brussels Nomenclature indicate that the fittings and mountings suitable therefor are those which subserve the purpose of the coach, enhance its appearance, or become an integral part thereof.

Since the ski and luggage carriers here are completely accessory to the

motor coach, having nothing to do with its ,functioning or appearance, and may be attached and removed very quickly at any time without damaging the coach or interfering with the operation of the vehicle, they are not fittings or mountings suitable for vehicle coachwork and are not classifiable under item 647.01, supra.

The claims in the protests which have been abandoned are dismissed and the remaining claims are overruled.

Judgment will be entered accordingly.

RAO, C. J., and FORD, J., concur.