(C.D. 3879)

J. C. DeJong & Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided August 21, 1969)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Arthur H. Steinberg*, trial attorney), for the defendant.

Before RAO AND FORD, Judges, and OLIVER, Senior Judge

OLIVER, Judge: The two protests consolidated for trial herein involve an importation of curtain pole rings, brass pole ends, and brass cafe curtain clips, which were classified by the collector of customs under item 647.05 of the Tariff Schedules of the United States (TSUS) for hinges and fittings and mountings, not specially provided for, suitable for doors, windows and other uses enumerated therein, at 16 per centum ad valorem.

Plaintiff claims that the imported items are properly dutiable under item 654.00 of TSUS at the rate of 10 per centum ad valorem, as articles of brass, not specially provided for, of a type used for household, table or kitchen use.

The pertinent provisions of TSUS are as follows:

Classified under:

SCHEDULE 6.—METALS AND METAL PRODUCTS
Part 3.—METAL PRODUCTS

\*       \*       \*       \*       \*       \*       \*

Hinges; and fittings and mountings not specially provided for, suitable for furniture, doors, windows, blinds, staircases, luggage, vehicle coach work, caskets, cabinets, and similar uses; all the foregoing, of base metal, whether or not coated or plated with precious metal:
Not coated or plated with precious metal:

\*       \*       \*       \*       \*       \*       \*

647.05                     Other _____ 16% ad val.

Claimed under:

Schedule 6, part 3, subpart F:

Articles not specially provided for of a type used for household, table, or kitchen use; toilet and sanitary wares; all the foregoing and parts thereof, of metal:

\*       \*       \*       \*       \*       \*       \*

Articles, wares, and parts, of base metal, not coated or plated with precious metal:

\*       \*       \*       \*       \*       \*       \*

Of copper:
654.00                     Of brass_____ 10% ad val.

The record consists of the testimony of one witness and four exhibits for the plaintiff. The defendant offered no testimony.

Counsel for the respective parties stipulated at the trial that the pole ends (exhibit 2) containing an element of steel, were in chief value of brass. It is not disputed that the other items at bar are in chief value of brass.

Jacques C. DeJong, the sole witness in the case, testified for the plaintiff substantially as follows:

He has been president of the plaintiff corporation since 1956, and has had 30 years of experience in the business relating hereto. His corporation imports and distributes hardware for decorators and builders. His duties involve management of the business, purchasing and sales.

The witness identified the following exhibits which the plaintiff introduced into evidence:

Collective exhibit 1 which consists of brass pole rings of 1 inch, 1¼ inch and ¾ inch diameter, the same as the merchandise on the entry in protest 66/16828.

Collective exhibit 2 which consists of eight pole ends the same as the pole ends on the entry in protest 66/17553, except for one size which is out of stock.

Collective exhibit 3 which consists of cafe clips the same, with the possible exception of size, as the merchandise so designated on the entry in protest 66/17553.

Plaintiff's illustrative exhibit 4 consists of a brass tube or curtain pole which rests on two brackets. On the two ends of the curtain pole are pole ends similar to exhibit 2. On the curtain pole are curtain rings similar to exhibit 1, and one cafe curtain clip similar to exhibit 3. The brackets are attached to a piece of board. A small curtain is attached to the pole rings. This (exhibit 4) was prepared by the plaintiff only for demonstration purposes in court.

The brass pole end on each end of the curtain pole prevents the curtain rings from sliding off the end of the pole whenever the curtains are opened. The pole ends also cover the ends of the pole and keep out moisture which would cause rusting on the inside of the pole. The rings slide on the curtain pole and have a small eye to facilitate the hanging of a curtain by means of a hook which permits the curtain to be removed easily for cleaning. The cafe clips are slipped over the curtain pole and hold the curtain between the teeth on the bottom side of the clip.

Mr. DeJong stated that articles represented by exhibits 1, 2 and 3 are used in the household, primarily in front of a window, or on porches as room dividers, or in bathrooms, although in the latter instance only the rings and clips are used and not the pole ends.

The witness testified that he sold such articles "all over the United States", to wholesalers and to drapery hardware manufacturers for use in the home and elsewhere in the manner demonstrated by exhibit 4.

The witness stated that in his experience of about 30 years of handling builders' hardware he was familiar with articles known as fittings and mountings. He testified that fittings and mountings for furniture consist of furniture knobs, handles and pulls, and brackets for shelves, and that fittings and mountings for doors would consist of door knobs, handles, plates and knockers. The fittings and mountings for windows would consist of knobs and locks with a door-type window, or grips, locks and weights for a window that slides up and down. Fittings for blinds, he stated, would consist of the pulleys which allow the slats to move and accommodate the opening and closing of the blinds and brackets with which the blinds are hung.

Staircase fittings would include the brackets which hold the bannister to the wall or the floor and stair rods over the steps. In the case of luggage, the brass corners, lock and metal handle would fall into this category. Cabinet fittings are the knobs, plugs and brackets for the shelves and also, if movable, casters. The witness testified that exhibits 1 through 3 were not similar in use at all to any of the fittings and mountings to which he referred. Exhibits 1 through 3 are not permanently attached to an article but are easily removable and are not really part of the finished product as are fittings and mountings for the window, blind or cabinet, whereas fittings and mountings are permanent parts of the articles with which they are connected. The main purpose of the pole rings and the cafe clips is to facilitate the movement of the curtain along the curtain pole on which they are hung.

A mounting, the witness stated, is something which facilitates the operation of another article. A window mounting is the frame in which the complete window is set and slides up and down. In a door-type window, the mounting is the frame onto which the window is fastened, generally by hinges.

A fitting in this context, he stated, is something that is built into an article and facilitates the operation of part of the article. For example, in a cabinet the handle would facilitate the opening of the door. The grips or the pulls on a window are fittings that allow it to operate up and down. The witness never bought or sold articles such as exhibits 1 through 3 as fittings or mountings and never heard them referred to in this manner in the trade. Exhibits 1 through 3 are not used on anything other than on curtain rods or poles.

On cross-examination the witness testified as to where, when, and how frequently he had observed the use of exhibits 1, 2, and 3. He stated that he had seen them in use "practically every day", first in his home, and in his travels all over the United States, naming New York and homes of customers in Los Angeles and San Francisco. He also saw them used in homes, offices, motels and restaurants. He could not recall any other places.

Pole ends, rings, and clips, he stated, are removed frequently when the curtains or drapes are to be cleaned, whereas fittings used in connection with windows are not removed once they are installed.

The subject of curtain pole rings and curtain pole ends has been considered under earlier tariff acts by the Customs Court and the Court of Customs and Patent Appeals, and since the General Interpretative Rules of TSUS do not provide the complete requirements of proof of chief use, the criteria established by cases interpreting the prior tariff acts are regarded as still controlling in the determination of chief use in cases arising under the present tariff schedules. See *Hoffschlaeger*

*Company, Ltd., American Customs Brokerage Co., Inc., et al.* v. *United States*, 60 Cust. Ct. 497, C.D. 3440, 284 F. Supp. 787 (1968). This latter citation refers also to the frequently cited case of *L. Tobert Co., Inc., et al.* v. *United States*, 41 CCPA 161, 164, C.A.D. 554 (1953), wherein it is succinctly stated that chief use is defined as an issue of fact which must be "established on the basis of positive testimony representative of an adequate geographical cross section of the nation." Both criteria are pertinent to the case at bar.

It is pointed out in *Tariff Classification Study Explanatory and Background Materials*, Schedule 6, part 3 (page 203), that item 654.00 of TSUS (under which the plaintiff herein is claiming) derives from paragraph 339 of the Tariff Act of 1930. The said paragraph 339 was construed by the court to be a chief use provision requiring proof of chief use as aforesaid (*W. J. Byrnes & Co. et al.* v. *United States*, 57 Cust. Ct. 148, C.D. 2746 (1966)). This view is in accord with the General Interpretative Rule 10(e)(i) of the General Headnotes and Rules of Interpretation which provides as follows:

> a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;

In *Herbert G. Schwarz, dba Ski Imports* v. *United States*, 60 Cust. Ct. 522, C.D. 3447, 284 F. Supp. 792 (1968), appeal 5326 pending, this court had before it TSUS item 647.01, as amended by the Technical Amendments Act of 1965, which has the same superior heading as item 647.05 under which the collector classified the merchandise at bar. In the course of the opinion it was noted that the Tariff Classification Study did not elaborate on the items intended to be covered by the superior heading, but that the heading appeared to have been derived in part from item 83.02 of the Brussels Nomenclature. The explanatory notes state that said item 83.02 does include:

> (G)   Curtain, blind and portière fittings (e.g., rods, tubes, rosettes, brackets, bands, tassel hooks, clips, sliding and runner rings, stops); cleat hooks, guides and knot holders for blind cords, etc.; staircase fittings, such as staircase treads, stair carpet clips, stair rods, banister knobs, etc.

It is apparent from the above that the pole rings, pole ends, and curtain clips herein were considered by the framers of the Brussels Nomenclature to be fittings for windows, and since the provisional language in the Tariff Schedules of the United States is similar, it appears that those who drafted the statute were of the same intention.

The common meaning of the statutory term "fittings" as used in TSUS is a matter of law for the court to decide. *United States* v.

*Florea & Co., Inc.*, 25 CCPA 292, T.D. 49396 (1938). In *Webster's Third New International Dictionary*, Unabridged (1963), the term "fitting" is defined as follows (page 860):

> fitting n * * * la: something used in fitting up: accessory, adjunct, attachment * * *

*Webster's Seventh New Collegiate Dictionary* defines the term:

> fitting: a small, often standardized, accessory part.

This court is of the opinion that the testimony and exhibits herein establish that the articles are accessories, adjuncts and attachments designed for window use within the meaning of item 647.05 of TSUS, as classified by the collector.

The records in the two cases decided under earlier tariff provisions and cited for support by the plaintiff, *J.C. DeJong & Co., Inc.* v. *United States*, 52 CCPA 26, C.A.D. 852 (1965), and *Kroder Reubel Co., Inc., Alltransport, Inc.* v. *United States*, 44 Cust. Ct. 274, C.D. 2186, 185 F. Supp. 515 (1960), are quite distinguishable from the record in the case at bar in that here the testimony is explicit by the plaintiff's own witness that the imported pole rings, pole ends and curtain clips were used not only in households, but in motels, offices, banks, and restaurants. Further uses and places, the witness stated, he could not recall. This court will not surmise, therefore, that the articles were chiefly used in the household, proof of which is required under item 654.00 of TSUS. Nor do we find sufficient required proof of record that the said articles were chiefly used over an adequate geographical cross section of the nation, which also is required under the statute. Irrespective of this latter requirement, however, the fact that the record at bar establishes apparently equal use of the articles in numerous establishments other than the household defeats the concept of chief use in the household. In our opinion the testimony herein does not warrant a holding by this court that the presumption of correctness attaching to the collector's classification has been overcome.

Based on the record and on all of the foregoing the protests herein are overruled. The classification of the collector of customs is affirmed.

Judgment will be entered accordingly.