(C.D. 4058)

Continental Arms Corp.
Gehrig, Hoban & Co., Inc. } *v.* United States

United States Customs Court, Second Division

(Decided August 7, 1970)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman* and
*Susan C. Cassell*, trial attorneys), for the defendant.

Before Rao, Ford, and Newman, Judges

Newman, Judge: This protest involves the proper tariff classification for certain articles imported from England in September 1964 and invoiced as "Valvespout Oilers." They were assessed with duty

by the Government at the rate of 1.275 cents per pound plus 15 per centum ad valorem under the provision in item 657.35 of the Tariff. Schedules of the United States (TSUS) for "Other" articles of copper, not coated or plated with precious metal.

Plaintiffs claim alternatively that the articles are properly dutiable under one of the following items:

1. Item 651.49, TSUS, at 10 per centum ad valorem—hand tools not specially provided for, and metal parts thereof, of brass.

2. Item 662.50, TSUS, at 10 per centum ad valorem—mechanical appliances, whether or not hand operated, for projecting, dispersing or spraying liquids or powders.

At the trial, counsel for the plaintiffs stated (R. 2): "* * * our original claim was under Item 662.50, and while we do not abandon this claim, we rely primarily upon our amended claim, which is Item 651.49 * * *." However, no argument was presented in plaintiffs' brief in support of the original claim under Item 662.50. Accordingly, we consider that claim as abandoned. *Randolph Rand Corp., J. J. Boll* v. *United States*, 52 Cust. Ct. 107, C.D. 2445 (1964), *aff'd*, 53 CCPA 24, C.A.D. 871 (1966).

Under all the facts and circumstances, we shall sustain the Government's classification.

### STATUTES INVOLVED

Classified under:

Schedule 6, Part 3, Subpart G, TSUS:

Subpart G headnotes:

> 1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.
>
>     \*       \*       \*       \*       \*       \*       \*
>
> Articles of copper, not coated or plated with precious metal:
>
>     \*       \*       \*       \*       \*       \*       \*

657.35    Other _____    1.275¢ per lb. +15% ad val.

Claimed under:

Schedule 6, Part 3, Subpart E, TSUS:

Subpart E headnotes:

> 1. Except for  \* \* \*, this subpart covers only articles with a blade, working edge, working surface or other working part of—
> (i) base metal;
>
>     \*       \*       \*       \*       \*       \*       \*

Hand tools (including table, kitchen, and household implements of the character of hand tools) not specially provided for, and metal parts thereof:

\* \* \* \* \* \* \*

Other hand tools:

\* \* \* \* \* \* \*

Other:

\* \* \* \* \* \* \*

Of Copper:

651.49           Of brass_____ 10% ad val.

### THE ISSUE

The sole issue is whether the valvespout oilers are hand tools having a blade, working edge, working surface, or other working part of base metal.

### THE RECORD

Plaintiffs offered the testimony of Abraham T. Tonkin, president of Continental Arms Corp., and introduced two exhibits:

Collective exhibit 1—consisting of two samples of valvespout oilers;

Illustrative exhibit 2—a cut-away section of the valve as it exists on the valvespout oilers in collective exhibit 1.

The facts are: "Valvespout oilers" are comprised of a plastic (polyethylene) container or body for holding the lubricant (oil or graphite powder) and a brass spout through which the lubricant is dispensed. The plastic body has a diaphragm on each side, and the flow of the lubricant may be controlled by manner of squeezing the body of the oiler. At the tip of the brass spout there are several precision made parts, including a needle valve. In operation, the user twists the end of the spout clockwise to seal it or counterclockwise to open it. When it is twisted clockwise, the rotation of the outer edge turns the needle valve and seals the spout so that no lubricant can escape. When it is rotated counterclockwise the valve opens so as to permit the flow of oil or powder. The purpose of the valve is to prevent the oil or other lubricant from leaking out of the valvespout. Also, by adjusting the valve so that it is partially closed, the flow can be controlled from a small drop to a stream of oil. The basic function of the valvespout oiler is to dispense a controlled amount of lubricant.

The valvespout oilers are used for lubricating data processing equipment, typewriters, office and vending machines. Servicemen carry the oilers in their tool kits. The oilers are sold to such customers as IBM, Remington Rand, National Cash Register, Friden, Univac, Western Union, and the United States Army and Navy. Office equipment manufacturers include the oilers in their list of tools which distributors

may purchase from them, and large typewriter distributors resell the oilers to typewriter repairmen.

## HOLLYWOOD ACCESSORIES CASE

Plaintiffs cite *Hollywood Accessories, Division of Allen Electronics & Equip. Co.* v. *United States*, 60 Cust. Ct. 360, C.D. 3391, 282 F. Supp. 499 (1968), as a controlling precedent. In that case certain pouring spouts or oilcan spouts, consisting of a curved metal tube with a spout at one end and with a rounded cutting blade inserted into the tube at the other end, used to puncture an oilcan and pour the oil through the spout into an automobile engine, were held to be dutiable under item 651.47 as a hand tool, not specially provided for. The court noted that the *Explanatory Notes to the Brussels Nomenclature* include under hand tools, oilcans, oilers, and can openers, "which is some indication that implements used for puncturing cans and those used for oiling were considered to be hand tools."[1] However, the court emphasized that the Brussels Nomenclature was not a complete guide to the intention of the Tariff Commission or Congress in construing the provisions involved, since the language of the tariff schedules is somewhat different from that of the Brussels Nomenclature.

In any event, the pouring spouts in *Hollywood Accessories* are substantially different from the valvespout oilers in the present situation. Hence, we do not consider that case to be dispositive herein. But even assuming, and without deciding, that the valvespout oilers are "hand tools," as that term is commonly understood, they are nevertheless excluded from subpart E since they do not possess a "blade, working edge, working surface or other working part" of base metal, as required by headnote 1 of subpart E. Cf. *The Nissho Pacific Corporation* v. *United States*, 63 Cust. Ct. 456, C.D. 3936 (1969).

## "WORKING PART"

In *Hollywood Accessories*, the court found that the pouring spouts had a blade or working edge of base metal, "thus meeting the first qualification for classification under the subpart to which item 651.47 belongs."[2] In the present case, plaintiffs do *not* contend that valvespout oilers possess a blade, working edge, or working surface. Rather, plaintiffs assert that the valvespouts are "working parts," inasmuch as they have a precision made valve which must be open for use and which may be adjusted to obtain a controlled flow of lubricating oil or powdered lubricant. Defendant, on the other hand, denies that the oilers have a "working part" within the meaning of the headnote provi-

---

[1] 60 Cust. Ct. at 367.
[2] 60 Cust. Ct. at 366.

sion. As construed by the Government, the "working part" of a hand tool is that part which performs work on an external object, and consequently defendant insists that the valvespouts do not perform such work.[3]

Thus, it is necessary to determine the meaning to be ascribed to the term "working part" in headnote 1 of subpart E. We have not found any precedent or legislative history which is helpful concerning that question. However, based upon the context in which the term "working part" is used in subpart E, we conclude that the construction urged by defendant is sound.

Some light is shed on the meaning of "working part" by the associated words, "blade, working edge, working surface," all of which perform work in relation to a workpiece.

Additionally, we have considered the various tools provided for *eo nomine* in subpart E, particularly the following hand tools covered by items 651.21 through 651.37: Hammers, sledges, crowbars, track tools, wedges, drilling tools, threading tools, tapping tools, chisels, gimlets, gouges, planes, pencil sharpeners, lead and crayon pointers, and screwdrivers. The foregoing tools all do some form of work vis-a-vis an object external to the tool. The same appears to be true of the other tools provided for *eo nomine* in subpart E.

Further buttressing the Government's interpretation is the language of headnote 1(viii), subpart G, part 1, schedule 5, which reads:[4]

Subpart G headnotes:

1.   * * * The provisions of this subpart do not cover—

   *       *       *       *       *       *       *

(viii) tools to which abrasives have been applied but which have other functioning or *working elements, such as cutting teeth, edges, grooves, and flutes* * * * [Emphasis added.]

Plainly, the statutory exemplars: cutting teeth, edges, grooves, and flutes all perform an operation on a workpiece, or object external to the tool.

We therefore think that Congress used the term "working part" in the sense urged by defendant, viz., that part of the tool which does work in relation to a workpiece or object external to the tool. The valve in the valvespouts merely restricts or controls the flow of oil or other lubricant going through the spout. The spout itself, however, does not work on an external object, being an entirely passive conduit. By con-

---

[3] According to *Webster's New International Dictionary* (Second Edition 1950), page 2951: "* * * Work is done when there is movement against a resisting force or when a body is given acceleration * * *;"

[4] See also headnote 1(iv), subpart E, part 3, schedule 6, where similar language was used.

trast, in *Hollywood Accessories*, the primary purpose of the oilcan spouts was the puncturing of the oilcan, which obviously is an object external to the tool. Hence, we are clear that the oilers herein are not analogous, either in their construction or function, to the articles in *Hollywood Accessories*. Since the brass valvespouts are not a "working part" of the imported oilers, such oilers are excluded from the provision for hand tools in item 651.49.

Plaintiffs' claim under item 651.49 is overruled; and the alternative claim under item 662.50 – having been deemed abandoned – is dismissed. Judgment will issue accordingly.