(C.D. 4282)

Sato Shoji, Inc. *v.* United States

United States Customs Court, Second Division

(Decided October 14, 1971)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*L. Patrick Gray III*, Assistant Attorney General (*Bernard J. Babb* and *Harold L. Grossman*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: This case presents for determination the proper classification of five different items composed of non-alloyed malleable cast iron.[1] All of these articles are used in conjunction with chain link fences and were assessed with duty at the rate of 19 per centum ad valorem under the provisions of item 647.00, Tariff Schedules of the United States, which provides as follows:

Schedule 6, Part 3, Subpart D, Tariff Schedules of the United States:

> Hinges; and fittings and mountings not specially provided for, suitable for furniture, doors, windows, blinds, staircases, luggage, vehicle coach work, caskets, cabinets, and similar uses; all the foregoing, of base metal, whether or not coated or plated with precious metal:
> Not coated or plated with precious metal:

| | | |
|---|---|---|
| 647.00 | Of iron or steel, of aluminum, or of zinc_____ | 19% ad val. |

---

[1] Parties have agreed to be bound by the analysis, plaintiff's collective exhibit 13, which establishes this fact.

Plaintiff contends the imported items fall within the language of item 657.10, Tariff Schedules of the United States, which reads as follows:

Schedule 6, Part 3, Subpart G, Tariff Schedules of the United States:

Subpart G headnotes:

> 1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

| | | |
|---|---|---|
| * | * | * | * | * | * | * |

Articles of iron or steel, not coated or plated with precious metal:
Cast-iron articles, not alloyed:

| | | |
|---|---|---|
| 657.09 | Not malleable _____ | 3% ad val. |
| 657.10 | Malleable _____ | 8% ad val. |

The record consists of the testimony of two witnesses called on behalf of plaintiff and the receipt in evidence of 12 exhibits. Exhibits 1–5 represent the imported merchandise. Plaintiff's exhibit 1 is known as a double drive gate catch which is fastened to the fence. A clamplike portion, not offered in evidence, attaches to the gate leaving the rodlike portion free to turn or move up and down. An illustration of the application is shown in plaintiff's illustrative exhibit 10.

Exhibit 2 is a gate keeper which is attached to a short pole in the ground. When the gate is opened and slides over the keeper it holds the gate in place to prevent it from swinging back and forth or closing. An illustration of this function is depicted in plaintiff's illustrative exhibit 9.

Plaintiff's exhibit 3 is a throw latch which is fastened onto the gate and is used as a locking device much like plaintiff's exhibit 1 except it is used on a single gate.

Exhibit 4 is a gate frame hinge and exhibit 5 is a post lock which are a part of a hinging device but may be used singly for other purposes. When used as a pair, they serve as a hinge. Exhibits 4 and 5 are not ordered in equal numbers but are ordered independently.

A review of the record and an examination of the samples of the involved articles established that not only are they suitable but they are primarily used with chain link fence gates. All of the items are physically attached to the chain link fence with the exception of plaintiff's exhibit 2, the gate keeper. Plaintiff contends the imported articles are not within the intended ambit of item 647.00, *supra*, even if they are deemed fittings or mountings since they are used on chain link fences. In any event, it is contended said tariff terms do not extend to essential components of fences.

Defendant contends that the merchandise consists of hinges per se provided for *eo nomine* or hardware for gates, i.e., fittings for the opening, closing or locking of gates.

In order for the court to interpret the statutory language, the intent of the framers of the provisions is of material assistance.

It is now well-settled that the so-called Brussels Nomenclature may be utilized as a guide to determine intent when the language is identical or sufficiently similar to that employed in the Tariff Schedules of the United States. *Cengar U.S., Inc.* v. *United States*, 65 Cust. Ct. 677, C.D. 4157, 319 F. Supp. 1404 (1970); *Hollywood Accessories, etc.* v. *United States*, 60 Cust. Ct. 360, C.D. 3391, 282 F. Supp. 499 (1968).

In *Herbert G. Schwarz, dba Ski Imports* v. *United States*, 60 Cust. Ct. 522, C.D. 3447, 284 F. Supp. 792 (1968), aff'd 57 CCPA 19, C.A.D. 971, 417 F. 2d 1391 (1969), the court had before it Tariff Schedules of the United States item 647.01, as amended by the Technical Amendments Act of 1965, which has the same superior heading as item 647.00 under which the collector classified the merchandise at bar. In the course of the opinion it was noted that the Tariff Classification Study did not elaborate on the items intended to be covered by the superior heading, but that the heading appeared to have been derived in part from item 83.02 of the Brussels Nomenclature, which provides:

> 83.02—BASE METAL FITTINGS AND MOUNTINGS OF A KIND SUITABLE FOR FURNITURE, DOORS, STAIRCASES, WINDOWS, BLINDS, COACHWORK, SADDLERY, TRUNKS, CASKETS, AND THE LIKE (INCLUDING AUTOMATIC DOOR CLOSERS); BASE METAL HAT-RACKS, HAT-PEGS, BRACKETS AND THE LIKE.

This heading covers general purpose classes of base metal accessory fittings and mountings, such as are used largely on furniture, doors, windows, coachwork, etc. Goods within such general classes remain within the present heading even if they are designed for particular uses (e.g., door handles or hinges for automobiles). The heading does not, however, extend to goods forming an essential part of the structure of the article, such as window frames, swivel devices for revolving chairs, etc.

The present heading therefore includes, *inter alia:*

\*    \*    \*    \*    \*    \*    \*

(B) Door closers, including automatic spring or hydraulic types, for doors, gates, etc.; door stops.

(C) Fittings for reinforcing, suspending, fixing or closing doors, windows, shutters or blinds (but not including locks and padlocks—heading 83.01). This group includes:—door guards fitted with chains, bars, etc.; espagnolette and casement bolts and fittings; casement fasteners and stays; fanlight and skylight openers, stays and fittings; cabin hooks and eyes; hooks and fittings for double windows; hooks, fasteners, stops, brackets and roller ends for shutters and blinds; letter-

box plates; door knockers, spy holes, etc. (other than those fitted with optical elements).

\* \* \* \* \* \* \*

(IJ) Other miscellaneous goods·such as:

(1) All types of hinges (e.g., butt hinges, lift-off hinges, angle hinges, strap hinges and garnets), corner braces, reinforcing plates, angles, etc., for doors, windows, shutters, furniture, pianos, vehicles, chests, trunks, caskets, boxes, suitcases, etc.

(2) Catches (including ball spring catches), bolts, fasteners, latches, etc., for doors, gates, furniture, etc.

From the foregoing, it is apparent the intent of the framers of the so-called Brussels Nomenclature was to include hinges, mountings and fittings for, among other things, doors and ·gates. Since the language of the Tariff Schedules of the United States is similar it appears that those who drafted the statute were of the same intention. The imported articles fit within the list of exemplars set forth, *supra*, and are therefore intended to be encompassed by the statutory language employed by item 647.00, *supra*.

The mere fact that a hinging, locking or holding device might be considered essential rather than optional, does not detract from the inclusion of such articles within item 647.00, *supra*. Since the articles are explicitly enumerated in the explanatory notes, whether they are used on doors, gates, etc., their use would still be as essential in any manner of use. They are therefore encompassed in said item 647.00, *supra*, as is evidenced by the intent to so include such articles.

The protest is therefore overruled.

Judgment will be entered accordingly.