(C.D. 2232)

THE WESTFIELD MANUFACTURING COMPANY *v.* UNITED STATES
(KORLIS, LIMITED, PARTY IN INTEREST)

United States Customs Court, Second Division

(Decided January 23, 1961)

*Lamb & Lerch* (*John G. Lerch* of counsel) for the plaintiff.

*George S. Leonard*, Acting Assistant Attorney General (*Alfred A. Taylor, Jr.,* trial attorney), for the defendant.

*Covington & Burling* (*Donald Hiss* and *Donald E. Claudy* of counsel) for the party in interest.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Plaintiff, an American manufacturer of bicycles, has, pursuant to the authorization of section 516(b) of the Tariff Act of 1930, as amended, challenged the collector's assessment of duty upon certain imported bicycles at the rate of 11¼ per centum ad valorem. The collector's action was taken pursuant to that portion of paragraph 371 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, supplemented by Presidential proclamation, 90 Treas. Dec. 285, T.D. 53883,[1] which provides as follows:

Bicycles with or without tires, having wheels in diameter
  (measured to the outer circumference of the tire):
    Over 25 inches:
        If weighing less than 36 pounds complete without accessories and not designed for use with tires having a cross-sectional diameter exceeding 1⅝ inches_____ $1.87½ each, but not less than 11¼% nor more than 22½% ad val.

---

[1] In the case of *Schmidt Pritchard & Co.* and *Mangano Cycles Co.* v. *United States*, 41 Cust. Ct. 108, C.D. 2029, affirmed, *United States* v. *Schmidt Pritchard & Co., Mangano Cycles Co.*, 47 C.C.P.A. (Customs) 152, C.A.D. 750, the rate change effected by T.D. 53883, *supra*, for bicycles of this class was declared invalid.

It is the contention of the plaintiff that the subject bicycles weigh more than 36 pounds, complete without accessories, and that, therefore, they are properly dutiable within said paragraph 371, as modified, *supra*, at the rate of $3.75 each, but not less than 22½ per centum ad valorem, nor more than 30 per centum ad valorem, as other bicycles. Specifically, it is claimed that the collector improperly excluded from the weight of the bicycles certain attachments, to wit, luggage carrier, kickstand, and lamps and generator.

The record establishes that plaintiff has complied with the provisions of said section 516(b), as amended, and the qualifying proceedings have been received in evidence as plaintiff's exhibit 1–A—1–I. It is apparent therefrom that in the opinion of the Bureau of Customs, followed by the collector with respect to the instant importation, the above-mentioned items were not entitled to be included in the weight of the bicycles for the reason that they were considered to be accessories. The Bureau's views are expressed in T.D. 54316 (92 Treas. Dec. 46) as follows:

(1) *Bicycles, complete without accessories, and accompanying articles.*—A bicycle "complete without accessories," within the meaning of paragraph 371, Tariff Act of 1930, as modified, consists of not more than the following:

The mud guards and chain guards
The frame and fork
The handle bar and handle bar grips
The sprocket, chain, cranks and pedals
The front and rear wheels, including the rims, hubs, axles, and spokes
The tires and tubes
The brakes, hand or foot
Dynamo mechanisms incorporated in hubs
An assembly consisting of a dynamo mechanism incorporated in the wheel hub, and the related lamp, brackets, and wiring
Gear shift mechanisms
The saddle or seat and seat post
All fittings, bearings, nuts, bolts, washers, and other articles essential to the assembly of the foregoing

The following articles, whether attached at the time of importation or imported in the same shipment for subsequent attachment in the assembly of the bicycle, are comprised within the bicycle entirety although they are not included in determining the weight of the bicycle "complete without accessories":

Lamps and lighting sets (other than lamps and lighting sets forming a part of an assembly including a dynamo mechanism incorporated in the wheel hub referred to above) and reflectors
Bells and horns
Tool kits and the included tools
Pumps
Luggage carriers
Mirrors, cyclometers and speedometers
Kickstands or other stands
Tanks
Mud flaps
Toe clips

Such articles are classifiable as components of the imported bicycle entirety and are subject to the rate applicable to the bicycles "complete without accessories" with which they are imported attached or unattached, provided it is established to the satisfaction of the customs officers at the ports of entry that the articles are to be sold at retail as components of the bicycle entirety and are not to be sold or distributed separately.

\*       \*       \*       \*       \*       \*       \*

The bicycles involved in this action are described in the invoices as follows:

Lightweight Cantilever Bicycles, brand "KORLIS", diameter wheels 26'', diameter whitewall tires 26 x 1.⅜'', complete with Sturmey Archer 3-speed, butyl tubes with Schrader valves, double caliper handbrakes, chrome fenders, chrome rims, chrome fork crown cover, two tone saddle, large two tone toolbag with tools, 3 pcs. chrome lighting unit, chrome front carrier, kickstand, front-wheel packed in usual position. Each bicycle nett.nettweight 34.83 lbs.

The United States customs examiner who passed the subject entry testified that the bicycle he examined conformed with the invoice description, except as to weight, and that no toolbag or tools were found in the particular carton he saw. He stated that he personally weighed the bicycle and ascertained that the net weight, including front carrier, kickstand, and lighting unit, was 36½ pounds and that the net nettweight, excluding said items, was 33½ pounds. He made no determination of the individual weight of the portions of the bicycle excluded from the net nettweight. These he described as follows:

The front carrier, luggage carrier, kickstand, which holds the bicycle in place when it's resting [usually \* \* \* composed of a steel bar and a bracket which is bolted onto the bottom of the bicycle], and the lighting unit. The lighting unit I have described here is a rear-wheel generator set, or rear-light reflector type of glass. It has a spring which, if the child riding the bicycle pushes it over, it puts a little wheel against the tire, the revolving sets the generator to working, and transmits an electric current to the rear light, sir. This is not incorporated in the hub of the bicycle.

The case for the plaintiff was tried within the framework of a theory that if an article is made for a particular model of bicycle and is not adapted for use on other models, or interchangeable from one to another, whether or not its use is essential for the operation of the bicycle, it is a part of a complete bicycle, rather than an accessory.

Plaintiff's theory apparently derives from counsel's interpretation of the case of *United States* v. *Antonio Pompeo*, 43 C.C.P.A. (Customs) 9, C.A.D. 602, wherein superchargers designed for use in Ford and Austin automobile engines were held to be parts of automobiles provided for in paragraph 369(c) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*. While it is true that, in reaching this conclusion, our appellate court emphasized the nature of the superchargers in relation to the ultimate specific use to which they were irrevocably dedicated, it can not be said that it considered irrelevant the function of the supercharger as an essential element in the operation of the engine in which it was installed.

Indeed, the decision rests upon the well-settled principle of the case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851, that "a 'part' of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.*" [Italics quoted.]

It was conclusively established, in the *Pompeo* case, that although many automobiles operate without a supercharger, once the supercharger is installed in an automobile engine, the engine will not operate if the supercharger fails. Hence, it was clear that, after installation, the supercharger met the definition of "parts" enunciated in the *Willoughby* case, *supra*, and, therefore, it became pertinent to consider the matter of its dedication to that specific ultimate use at the time of importation.

The weight of authority is contrary to the proposition advanced by the plaintiff. *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T.D. 41434; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T.D. 41673; *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust Appls. 285, T.D. 42872; *United States* v. *Willoughby Camera Stores, Inc.*, *supra*; *United States* v. *Carl Zeiss, Inc.*, 24 C.C.P.A. (Customs) 145, T.D. 48624; *United States* v. *E. Leitz, Inc.*, 26 C.C.P.A. (Customs) 418, C.A.D. 49; *United States* v. *Cody Manufacturing Co., Inc.*, *Rohner Gehrig & Co.*, 44 C.C.P.A. (Customs) 67, C.A.D. 639; and *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, 41 Cust. Ct. 11, C.D. 2014.

The mere fact that two articles are designed to be used together is not alone sufficient to establish that either is a part of the other, or of their combined entity. It must also be shown that the article claimed to be a part subserves an essential purpose in the thing for which it is destined, "without which the article to which it is to be joined, could not *function as such article.*" As stated in the case of *United States* v. *Cody Manufacturing Co., Inc., et al.*, *supra*:

The foregoing authorities are uniform in applying the rule that an element which is not essential to the operation of an article for its intended purpose is not a part of that article.

\*  \*  \*  \*  \*  \*  \*

\* \* \* However, as shown by the decisions cited above, the determining fact is not whether the alleged part can be used without the article, but whether the article can be used for its intended purpose without that part. \* \* \*

No useful purpose can be served by any detailed analysis of the evidence introduced in behalf of plaintiff in this case, since much of the testimony given by its witnesses characterizing the disputed items as parts of bicycles rests upon their understanding that noninterchangeability or dedication to use on a specific model of bicycle is the dividing line between parts and accessories. They were, however, men of ex-

perience in the domestic bicycle trade, and, insofar as their testimony relates to the purposes and functions of the articles in issue, we consider it relevant and material.

In substance, plaintiff's evidence tends to establish that, functionally, a luggage carrier does not help the operation of a bicycle, but merely adds to its salability and play value; that a kickstand is a device used for parking a bicycle, which has no effect upon the operation of the bicycle when it is in motion; and that, although bicycles operate as efficiently in the daytime without lamps, certain states require lamps for nighttime riding, and every state requires a reflector when a bicycle is ridden at night. Additionally, it is not disputed that in the United States bicycles are sold primarily for use by boys and girls between the ages of 5 and 14 years.

It further appears from the evidence introduced by the party in interest that bicycles can operate safely and efficiently without luggage carriers, and are frequently sold without them in this country; that no American manufacturer markets a bicycle without either a kickstand, or, in the case of a 20-inch wheel vehicle, used by very young children, a training wheel, except perhaps for racing bicycles; that a kickstand is designed to keep the bicycle upright when not in use to prevent damage, but performs no function with respect to its safety or efficiency when the bicycle is in motion; that many 26-inch bicycles are sold without lamps; and that, since primarily used by children, bicycles are not generally ridden at night. The witnesses for defendant, also men of experience in the bicycle trade, were of opinion that all of the items in issue were accessories not essential to the completeness of a bicycle.

Based upon these facts, there can be little question concerning the propriety of the collector's action with respect to the involved luggage carriers. It is uncontroverted that they serve no purpose in the operation of a bicycle and that bicycles can, and do, function safely and efficiently without them, in the manner for which they are normally designed. Luggage carriers are clearly items enhancing the attractiveness, and, perhaps even the convenience of a bicycle, but having no effect upon its performance. Since a bicycle is complete in every respect without the attachment of a luggage carrier, the latter is obviously no more than an accessory, specifically excluded from the weight of the bicycle by the language of the trade agreement provision.

No such clearly defined considerations present themselves with respect to the other items here in issue, notwithstanding the affirmative evidence that the *per se* locomotion of a bicycle is not dependent upon either a lamp set or a kickstand.

In urging that lamp sets are parts of bicycles, plaintiff relies upon the case of *Wedemeyer* v. *United States*, 7 Cust. Ct. 141, C.D. 556,

which held similar products to be properly so classifiable. The record in the *Wedemeyer* case established that the subject lamps and accompanying generators were "exclusively used on bicycles to illuminate the same in the night time in order to insure the safety of the bicyclist and the public in general." Based upon information that the statutes of many states require bicycles to be equipped with lamps when they are ridden at night, and under authority of the case of *United States* v. *Bosch Magneto Co.*, *supra*, this court repudiated a prior decision holding bicycle lamps to be accessories (*Mead Cycle Co. et al.* v. *United States*, 28 Treas. Dec. 389, T.D. 35223) and stated:

> The existence of these statutes would clearly indicate that the safe, proper, and efficient operation of bicycles at night requires the illumination furnished by bicycle lamps such as those involved herein.

Counsel for the party in interest takes the position that the *Wedemeyer* case is no longer controlling, for the reason that both the instant record, as well as the records of proceedings before the United States Tariff Commission on Escape Clause Investigations on the subject of bicycles in 1955 and 1957 (Report No. 37 and Report No. 58, respectively), establishes that bicycles are primarily sold to, and chiefly used by, children between the ages of 5 and 14 years. It is urged that children of these tender ages are not ordinarily permitted by their parents to ride their bicycles after dark, and, therefore, lamps are not essential to the safe, efficient, and proper operation of bicycles. It is also argued that the instant record lacks evidence to establish that these lamp sets are exclusively used on bicycles for purposes of nighttime illumination.

We are of opinion, however, that the inherent character of these lamps, as revealed both by their physical appearance and the description of their method of operation, establishes that they are designed and intended to be used on bicycles for purposes of illumination. Moreover, while it may be true that most bicycle riders in the United States today are young children, whose parents may not permit them to ride their bicycles at night, it does not follow that their use is *ipso facto* restricted to daytime activities. Irrespective of private limitations, there is public authority for the use of bicycles during the evening hours. When they are so operated, some form of illumination is essential for the safety and protection of the rider. Since the lamps in issue possess the capacity to furnish that illumination and are manifestly used for that purpose, they fall within the category of articles properly termed parts of bicycles.

Turning now to the question of the kickstands, we observe that we are confronted with a device which functions, not in the operation of the bicycle, but only when it is not in use. The record shows that a kickstand serves to keep the bicycle erect and in place when it is not

moving, to prevent it from being damaged. Obviously, then, the mobility of a bicycle is not impeded by the absence of a kickstand, nor is a kickstand necessary to make it go. But a bicycle is an unwieldy mechanism which can not stand of its own accord. It is a matter of common knowledge that without some form of parking device, when a bicycle is not in use, it must either be rested against an upright structure or left lying upon its side. The location of the former depends on chance; resort to the latter may occasion damage to the vehicle and inconvenience to both the rider and public. It would seem, therefore, that if a bicycle is to be operated properly, efficiently, and in its ordinary manner, it must be provided with a means for keeping it erect and free from damage. Kickstands are the devices which supply that need. We are, therefore, of the opinion that kickstands are so intimately connected with the use of bicycles as to be essential to their completeness, and properly to be considered, for tariff purposes, parts of bicycles.

Although plaintiff, in its complaint to the Bureau of Customs (plaintiff's exhibit 1–C), has also objected to the exclusion from the weight of bicycles, "complete without accessories," of tanks, reflectors, and other component parts, such items were not imported with the bicycles at bar, nor are they specifically embraced by plaintiff's protest. Consequently, we make no determination here as to their status in the weight of a bicycle.

Upon the foregoing considerations, we hold that lighting sets and kickstands are parts of bicycles, the weight of which must be taken into consideration in ascertaining their weight, "complete without accessories," within the purview of paragraph 371 of the Tariff Act of 1930 as modified, *supra*, and that luggage carriers are accessories to be excluded from that calculation. The claim of the plaintiff is sustained to the extent indicated. In all other respects and as to all other merchandise, all other claims are overruled.

Judgment will be entered accordingly.