(C.D. 3825)

ROCKY CYCLE CO., INC.
JOSEPH A. PAREDES        *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 20, 1969)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.

*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* and *Patrick D. Gill*, trial attorneys), for the defendant.

Before RAO and FORD, Judges, and WILSON, Senior Judge

WILSON, Judge: The official papers were received in evidence without being marked. The Special Customs Invoice and the Packing List show the numerous items imported and contain the statement "Motorcycle Parts and Accessories." The merchandise was exported by Asia Machinery Trading Co., Ltd., of Osaka, Japan, on June 23, 1966 from Kobe, Japan, and was entered at the port of San Francisco, California, on August 1, 1966.

The protest relates only to the items invoiced as "200 pcs. A4540 * * * Tandem Folding Foot Pegs" and "300 pcs. A6522 Honda Tandem Seats: Black, without Honda Name." The protest was severed as to the tandem seats and a new protest was filed therefor. Accordingly

this case only affects the classification, as agreed by counsel, of the A4540 Tandem Folding Foot Pegs. They have been classified under item 657.20, Tariff Schedules of the United States (TSUS), for articles of metal not more specifically provided for elsewhere in the tariff schedules, articles of iron or steel, not coated or plated with precious metal, other articles, other, and assessed with duty at 19 per centum ad valorem.

The protest claims that these foot pegs are properly classifiable for "motorcycles and parts thereof * * * parts" under item 692.55 TSUS and subject to duty at 12 per centum ad valorem, or as hinges, fittings, and mountings, not specially provided for, designed for motor vehicles under item 647.01 and subject to duty at 8.5 per centum ad valorem. Plaintiffs' brief contends that these foot pegs contribute to the safe and efficient operation of motorcycles and that they are fittings, and mountings, designed for motor vehicles "since these foot pegs (1) are properly considered to be 'parts' of motorcycles (2) attach to and become a part of the coachwork of a motor vehicle and (3) are specifically enumerated under the provision for hinges, fittings and mountings in the Brussels Nomenclature."

Defendant's brief contends that the foot pegs in issue are for use of a passenger on the rear portion of the motorcycle and are not used by the driver in the "*ordinary* operation of a motorcycle"; that in the light of definitions of tandem and tandem bicycle (Webster's Third New International Dictionary of the English Language, 1963, the description in the invoice (Tandem Folding Foot Pegs) "constitutes an admission by plaintiffs that these foot pegs are for use by the rear passenger and not the driver."

The tariff statutes of the United States under consideration are as follows:

Classified under:

Schedule 6, part 3, subpart G.

Subpart G.-Metal Products Not Specially Provided For.

Subpart G headnotes:

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

    *        *        *        *        *        *        *

Articles of iron or steel, not coated or plated with precious metal:

    *        *        *        *        *        *        *

Other articles:

    *        *        *        *        *        *        *

657.20        Other _____ 19% ad val.

Claimed under:
   Schedule 6, part 6, subpart B.

   Motorcycles and parts thereof:
        \*     \*     \*     \*     \*     \*     \*

692.55    Parts _____ 12% ad val.

   Schedule 6, part 3, subpart D.

      Hinges; and fittings and mountings not specially provided for, suitable for furniture, doors, windows, blinds, staircases, luggage, vehicle coach work, caskets, cabinets, and similar uses; all the foregoing, of base metal, whether or not coated or plated with precious metal:
          Not coated or plated with precious metal:
            Of iron or steel, of aluminum, or of zinc:

647.01               Hinges, fittings, and mountings, designed for motor vehicles_____ 8.5% ad val.

The plaintiffs introduced four exhibits and the testimony of Mr. Jerry Cooper. The defendant introduced the testimony of Mr. George Gudbranson.

Mr. Cooper identified two pieces of the involved A4540 tandem folding foot pegs, exhibit 1, which are imported placed two in one bag. He placed a circle around such pegs on a picture received as exhibit 2. He also circled item A4540 on a picture of a BSA motorcycle, received as exhibit 3. He identified certain saddles (seats) Nos. 6550, 6560, A6501 and A6502 on a picture received as exhibit 4, which seats are used with model M 5135 and BSA motorcycle.

Mr. Cooper supervises retail sales throughout the United States to franchised motorcycle dealers and repair shops for Rocky Cycle Co., Inc. He has owned and repaired motorcycles and has been familiar with them for 12 or 13 years. He rode them for sport, pleasure and in competition, and many times rode between San Francisco and Los Angeles. He also rode as a passenger on the rear seat. He is familiar with the installation of foot pegs.

Mr. Gudbranson, a customs agent, is familiar with motorcycles and drove them for about 14 years. From time to time he owned them and repaired them. He rode Hondas, Harley-Davidsons, BSA's, and Triumphs and saw exhibit 1 on them as well as on a Ducati motorcycle, used in the rear for passengers.

There is substantial testimony of both witnesses that the imported tandem folding foot pegs are used in the rear of tandem motorcycles for the passenger. Plaintiffs' witness also asserts that the imported tandem folding foot pegs are used in the front of tandem motorcycles for the driver and also by drivers who race motorcycles in competition; that hundreds participate in racing motorcycles and he did so until

1967 in northern and central California in District 36 Sportsman. He stated that in his opinion it is for safety because if people are hit with a stationary foot peg it would do a lot of damage by dragging the person, or another motorcycle, along the track, whereas a folding foot peg would fold while the motorcycle keeps going. He testified that foot pegs are something that a rider or passenger puts his feet on when riding a motorcycle; that when installed on the rear for a passenger it is usually installed with a swinging arm, and when installed on the front for the rider it is installed on a bracket that usually is attached to the frame. The foot pegs serve as foot rests. He stated that when mounted for use by the driver it is essential for safe operation of the motorcycle.

Defendant's witness testified that he saw folding foot pegs in use in the rear for passengers on the Honda, BSA, Triumph and Ducati motorcycles for use of the passenger but has not observed such pegs in front for the driver. He stated that the purpose of folding foot pegs, primarily, is to rest the feet on when sitting in the rear, and to get them out of the way when not in use. He also stated that when the folding foot pegs are used by passengers, it was, in his opinion, essential to the safety in riding on the motorcycle.

The defendant's contention in its brief that the rear foot pegs in question do not contribute to the safe and efficient operation of motorcycles is in conflict with the testimony of its own witness, Mr. Gudbranson, who testified as follows:

Q. On what type of motorcycles have you seen that peg such as Exhibit 1 used on?—A. I have seen them on Honda, BSA, Triumph, Ducati.

Q. And where have you seen those folding footpegs in use?—A. I have seen them in use on the rear.

Q. Of the motorcycle?—A. For the use of the passenger. [R.36]

\* \* \* \* \* \* \*

Q. Do you know what the purpose is of a folding footpeg?—A. Primarily to rest the feet on when you are sitting, in this case, I would say in the rear of the motorcycle. [R.38]

\* \* \* \* \* \* \*

Q. When you have observed the folding footpeg being used by rear passengers, has it been, in your opinion, essential to the safety in riding on the motorcycle?—A. Yes, I would say so. [R.39]

Defendant's brief quotes definitions from Webster's Third New International Dictionary of the English Language, 1963, as follows:

tandem, *adj.*:  consisting of two arranged one behind another.

tandem bicycle, *n.*:  a bicycle for two or more persons on which the riders sit one behind another.

It follows from the foregoing definitions that a tandem motorcycle is a motorcycle for two or more persons on which the riders sit one behind another. It is common knowledge that there are several kinds of makes and styles of motorcycles. Webster's New International Dictionary of the English Language—Second Edition—Unabridged (1956), page 1600, states:

motorcycle, *n.* a two-wheeled automotive vehicle having one or two riding saddles and sometimes having a third wheel for the support of a sidecar. [This is repeated at page 551 of Webster's New Collegiate Dictionary, Second Edition, 1956.] In Great Britain the term *motorcycle* is treated by statute (3 Edw. VII c.36) as limited to motorcars (self-propelled vehicle) designed to travel on not more than three wheels * * *.

Webster's Seventh New Collegiate Dictionary (1965), page 900, states:

tandem *n.* * * * 2 : a group of two or more arranged one behind the other or used or acting in conjunction.

tandem *adv* (or *adj*) : one after or behind another.

tandem bicycle *n:* a bicycle for two or more persons sitting tandem.

At page 553 the above dictionary states:

Motorcycle *n:* a 2-wheeled automotive vehicle having 1 or 2 saddles and sometimes a 3d wheel for support of a sidecar.

Funk & Wagnalls New Standard Dictionary of the English Language (1952), page 1619, states:

motorcycle—A cycle, as a bicycle or tricycle, propelled by a motor.

And at page 2462:

tandem—2. A cycle with two seats for two persons, one behind the other.

It is demonstratively clear that a tandem motorcycle meets the foregoing definitions. Hence, as testified to separately and collectively by Cooper and Gudbranson "Tandem Folding Foot Pegs," the involved imported articles, would be of essential use for safety in driving motorcycles on tandem motorcycles, whether affixed in front or rear, or both front and rear.

Defendant's brief asserts that because of the definitions which it quoted, the description in the invoice for exhibit 1, "constitutes an admission by plaintiffs that these foot pegs are for use by the rear passenger and not the driver." Plaintiffs' witness testified that he used the imported foot pegs, saw them installed and used by others; that when installed on the rear for passengers they are installed with a swinging arm, and when installed on the front for the driver they are installed on a bracket that is usually attached to the frame. Defendant's witness

did not deny that testimony but merely stated that he never saw folding foot pegs on the front for drivers.

The court is not of the belief that defendant's contention that the invoice description of the involved item "constitutes an admission by plaintiffs that these foot pegs are for use by the rear passenger and not the driver" is of any controlling force or of importance. Items 692.55 and 647.01 provide respectively for "motorcycles and parts thereof" and for "hinges, fittings and mountings, designed for motor vehicles." Neither of said TSUS items provides for use *only* in the rear by rear passengers or *only* for use in front by drivers. Thus the place where the imported folding foot pegs are used upon a motorcycle or used upon a motor vehicle is of no relevancy.

The defendant's witness confirmed that he saw folding foot pegs such as exhibit 1 on the rear of the Honda, BSA, Triumph and Ducati motorcycles. In his opinion, when the folding pegs were used in the rear by passengers, *they were essential to safe driving of the motorcycles.*

The statute does not refer to any particular type motorcycle or motor vehicle, whether the "regular run of the mill" or racers, or tandems or those with sidecars. Nor does the statute require the peg to be of a particular type, stationary or folding, or a universal peg to fit all makes or models or kinds of motorcycles or motor vehicles.

Defendant's brief alleges "that the foot pegs in issue are for the use of additional passengers on the rear portion of the motorcycle; they are not used by the driver in the *ordinary* operation of a motorcycle." Thus defendant concedes that exhibit 1 *is used on motorcycles.* The court knows of no statutory or other requirement, and none has been called to our attention, that such folding foot pegs must be used by the driver in the "ordinary" operation of a motorcycle. It is sufficient if they are in use as a "part" of one of the commonly known motorcycles. The folding foot pegs perform a useful purpose, and are not merely accessories.

It is of interest that defendant's brief alleges that it "does not argue herein that foot pegs for the driver should not be classified as parts." The brief then refers to the invoiced item A4541, *non*-folding foot pegs, and states that *they* are ordinarily used by the driver; that they were classified as parts, and that such classification is not in issue. Those A4541 *non*-folding foot pegs were classified under TSUS item 692.55 at 12 per centum ad valorem, which is the same as plaintiffs' claim for the A4540 tandem folding foot pegs here in issue. If the A4541 *non*-folding foot pegs ordinarily used by the driver may be considered as "parts" under 692.55, then the A4540 tandem folding foot pegs ordinarily used by the passenger may be considered as "parts" under 692.55.

However, the district director classified the A4540 tandem folding foot pegs under the so-called catchall item, TSUS 657.20, for articles not specially provided for elsewhere in the schedules, articles of iron or steel, other articles, other, at 19 per centum ad valorem. The plaintiffs claim that the A4540 pegs are subject to duty as motorcycles and parts thereof at 12 per centum ad valorem. The tandem folding foot pegs utilized on tandem motorcycles, as such, are more specifically provided for as parts of motorcycles than as other articles of iron and steel.

Defendant's brief states that in the discussion on the use of motorcycles in 15 Encyclopaedia Britannica 903–905 (1947) "no mention is made of the passenger carrying aspect of motorcycles." We note that the above volume at page 904 states that "Motorcycles are made in all sizes from about 1–5 to 12 h.p., and a machine of 3–5 h.p. or more is capable of taking a side-car." It is also there stated:

### United States

* * * The heavy type of motorcycle is used in police and commercial work, for pleasure, both solo and with side-car, and has also found a useful place in the army.

The foregoing undoubtedly indicates a passenger carrying aspect for motorcycles and the court from its own observations takes judicial notice that some motorcycles, especially tandem motorcycles and those with side cars are used by police, and by the army, and also by individuals for pleasure and for commercial work with and without passengers.

Defendant's brief refers to the case of *Herbert G. Schwarz, dba Ski Imports* v. *United States*, 60 Cust. Ct. 522, C.D. 3447, which cites with approval and quotes from *The Westfield Manufacturing Company* v. *United States (Korlis, Limited, Party in Interest)* 46 Cust. Ct. 52, C.D. 2232, affirmed *sub nom.*, *United States (Korlis Ltd., Party in Interest)* v. *The Westfield Manufacturing Company*, 49 CCPA 96, C.A.D. 803. The trial court in *Westfield, supra*, stated at page 57, that it was *uncontroverted* that luggage racks or carriers *served no purpose in the operation of a bicycle and that bicycles can, and do, function safely and efficiently without them in the manner in which they are normally used*. The court held the racks or carriers to be accessories for bicycles and not parts thereof. In the case at bar it is *uncontroverted* that the tandem folding foot pegs *serve the purpose of safety in the operation of tandem motorcycles and would not function safely or efficiently without them in the manner in which tandem motorcycles are normally used;* the foot pegs do not enhance the attractiveness or convenience of a tandem motorcycle. They are not accessories but are necessary and useful parts of tandem motorcycles.

The court agrees with the statement in plaintiffs' brief that

Unlike the bicycles involved in the *Westfield Manufacturing* case, *supra*, the [tandem] motorcycles to which the [tandem folding] foot-pegs involved herein are attached are serious articles whose function and purpose is to transport passengers from place to place. * * *

The *Schwarz* case, *supra*, involved ski and luggage carriers mounted upon the exterior of automobile bodies which were fastened thereto by bolts that went through holes at the base of the carrier and into threaded holes provided on the automobile by the manufacturer for installation of the carriers. The court held that the carriers were *not parts* of automobiles nor within the term "vehicle coachwork" under TSUS item 647.01, and did not contribute to the safe and efficient operation of the automobile; that they were easily removable though to be "permanently" attached, and that their removal would not affect the functioning of the motor vehicle. In the case at bar the tandem folding foot pegs *are parts* of tandem motorcycles; their removal would compel the passenger to dangle his feet unsupported alongside the tandem motorcycle while in motion with consequent lack of safety which might cause an accident affecting the ordinary functioning of the tandem motorcycle.

In *Industrial Operations, Inc.* v. *United States*, 30 Cust. Ct. 82, C.D. 1500, the court held that certain motorcycle speedometers and parts were properly dutiable as "Parts * * * for motor cycles" at 15 per centum ad valorem under paragraph 369(c) of the Tariff Act of 1930, as modified by the trade agreement between the United States and the United Kingdom, 74 Treas. Dec. 253, T.D. 49753. The speedometers were classified as devices intended or suitable for measuring distance or speed, under paragraph 368(a)(1)(2) of said amended act, while certain flexible shafts and couplings used to adjust the speedometers to motorcycles were classified as parts of said devices under paragraph 368(c) of said amended act.

In *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602, superchargers which were optional equipment were held to be parts of automobiles because when installed they became integral, constituent, and component parts without which the motors would not function. In the case at bar, the folding foot pegs are parts of tandem motorcycles, and integral, constituent and component parts without which the tandem motorcycle would not properly safely function when a passenger is aboard.

In *United States* v. *Cody Manufacturing Co., Inc., Rohner Gehrig & Co., Inc.*, 44 CCPA 67, 72, C.A.D. 639, the court stated that "the determining fact is not whether the alleged part can be used without the article, but whether the article can be used for its intended purpose without that part." In the case at bar, the intended purpose of the

folding foot pegs is for the use of a passenger of a tandem motorcycle. The tandem motorcycle cannot safely and efficiently be used for its intended purpose with a passenger without the folding foot pegs.

In *Gallagher & Ascher Company* v. *United States*, 54 Cust. Ct. 141, C.D. 2522, lock cylinders which were parts of automobile gas tank covers were held to be parts of automobiles because the gas tank of an automobile requires a cover for the safe and efficient operation of the automobile, and when installed "the device becomes part of the article for which it was designed and with which it was intended to be used." This is equally applicable to the imported tandem folding foot pegs designed and intended to be used on tandem motorcycles.

The court does not consider that the imported tandem folding foot pegs are properly encompassed within the term "vehicle coachwork" referred to in TSUS item 647.01, or to "coachwork" in item 83.02 of the Nomenclature for Classification of Goods in Customs Tariffs, generally known as the Brussels Nomenclature for "Base metal fittings and mountings * * *," as is claimed for them by plaintiffs. The above terms are limited by the heading in the Explanatory Notes to the Brussels Nomenclature to fittings and mountings suitable for *vehicle coachwork*. Hence they do not come under TSUS item 647.01 for "Hinges; and fittings and mountings * * * vehicle coachwork * * * designed for motor vehicles" at 8.5 per centum ad valorem, as claimed for them by plaintiffs. There is no coachwork on the tandem motorcycles and that claim in the protest is overruled.

On the entire record, the court finds and holds that the imported tandem folding foot pegs A4540 are parts of motorcycles under TSUS 692.55 and subject to duty at 12 per centum ad valorem.

Judgment will be entered accordingly.