**MILLER HARNESS CO., Inc.**

v.

**UNITED STATES.**

C.D. 3053; Protest No. 64/23771–1819–63.

United States Customs Court,
First Division.

July 6, 1967.

Siegel, Mandell & Davidson, New York City (Harvey A. Isaacs, New York City, of counsel), for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Bernard J. Babb, Trial Atty.) for defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge.

BECKWORTH, Judge:

The merchandise involved in this case consists of horse currycombs, imported from Finland, and entered at the port of New York on June 15, 1962. They were assessed with duty at 2½ cents each and 17 per centum ad valorem under paragraph 1537(c) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108, as combs of whatever material composed, except metal or compounds of cellulose, not specially provided for. The claim presently relied upon is that the merchandise is dutiable at 15 per centum ad valorem, directly or by similitude, under paragraph 216 of said tariff act, as modified by the General Agreement on Tariffs and Trade, 82 Treas.Dec. 305, T.D. 51802, as articles composed in part of carbon, wholly or partly manufactured, not specially provided for.

The pertinent provisions of the tariff act, as modified, are as follows:

Paragraph 1537(c) of the Tariff Act of 1930, as modified by T.D. 54108:

> Combs of whatever material composed, except combs wholly of metal or wholly of compounds of cellulose, not specially provided for:
>
> \*     \*     \*     \*     \*     \*
>
> Other, valued over $4.50 per gross ..
> .............................2.5¢ each and
> 17% ad val.

Paragraph 216 of the Tariff Act of 1930, as modified by T.D. 51802:

> Articles or wares composed wholly or in part of carbon or graphite, wholly or partly manufactured, not specially provided for ........................15% ad val.

Paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954:

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may

be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any non-enumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

At the opening of the trial plaintiff offered in evidence two horse currycombs representative of the merchandise at bar (exhibits 1–A and 1–B), and a sample representative of another type of horse currycomb (exhibit 2). Exhibits 1–A and 2 were sent to the customs laboratory for analysis and, at a subsequent hearing, the reports of analysis were received in evidence (exhibit 3). The analysis of exhibit 1–A states that the sample is composed of a polyethylene type synthetic resin containing no ash or organic filler and that the free carbon content is less than 2 percent. Exhibit 2 is stated to be composed of 95 percent black compounded synthetic rubber, the rubber portion containing 23 percent by weight of free carbon, and the entire sample containing in excess of 2 percent by weight of free carbon.

Exhibit 1–B, which is the same as exhibit 1–A, is a black plastic oval object about 7¾ inches long and 3½ inches wide with a wide strap or handle and rows of teeth of the same material on the underside. There are 20 rows of teeth with a space between each 5 rows. Exhibit 4, which is the same as exhibit 2, is a black oval object of stiffer material than exhibit 1–B, about 6¼ inches long and 4 inches wide, with a fabric strap or handle, having 3 circular serrated ridges of the same material on the underside.

Plaintiff called Henry J. Hellmann, a salesman who has been in the employ of Miller Harness Co., Inc., the plaintiff herein, for 2 years, and who had been in the professional horse business for 15 years prior thereto. He is a member of the American Horse Shows Association and the American Professional Horsemen Association, owns horses, and has been familiar with the care of horses for 30 years. He has been familiar with a currycomb such as exhibit 4 for 20 years, had seen it in Europe, and in all parts of the United States. He stated: "Every kid who has a horse has a currycomb like this." He had first seen a currycomb like exhibit 1–B in June 1962, when he came to the United States and since then has seen them more or less in every stable. It is used to massage the hide of a horse and loosen the dirt from the body, by means of a straight up and down motion or a circular motion. He would not describe that as a combing operation because "you go two ways." With a comb you go one way. He had never seen exhibit 1–B used on any animal but a horse. Exhibit 4, the rubber currycomb, differs slightly in use from that of exhibit 1–B. The latter is softer on a horse and is more flexible so that the user can get in the corners and in the ankles with it. Exhibit 4 is too rough on soft parts.

The witness was then shown an article (exhibit 5) which he called an old-fashioned type of a currycomb and said he had seen it used on cattle. It is used only to scrape cattle down and get the manure off. It cannot be used in a circular motion or in an up and down motion. The exhibit is a round metal object with a handle, having four circles of thin metal with both edges serrated. According to the witness, it is representative of one type of metal currycomb.

After a horse is curried, Mr. Hellmann said, it is brushed to remove dust and loose hair with either a dandy brush or a body brush. A sample of a dandy brush was received in evidence as illustrative exhibit 6.

There was also received in evidence an article which the witness called a mane comb (exhibit 7). It is a flat metallic

object with a single row of teeth and resembles an ordinary comb except that the teeth are heavier, longer, and farther apart. The witness said it is used to comb the mane or tail of a horse, using a downward stroke only, and is not used on the body.

Mr. Hellmann testified that he has sold articles like exhibits 1–A and 1–B in all parts of the United States, in South America, and in Canada. The article is sold by his company as a currycomb and is known as such. He said that there were other currycombs on the market, shaped more or less the same as those involved here, and used for the same purposes. He stated:

* * * There is one more curry comb on the market with a handle, and the rubber curry comb is a little bit more rounded, and one metal curry comb is a little bit more rounded.

Mr. Hellmann also testified:

Q. Mr. Hellmann, do you have any experience in the sale of combs themselves other than Plaintiff's Illustrative Exhibit 7, which you identified as the mane comb?—A. A mane comb, yes.

Q. Do you have any experience in selling combs other than the sale of those?—A. No.

The principal issue is whether the imported currycombs are combs within the meaning of that term as used in paragraph 1537(c), supra. Plaintiff claims that they do not resemble a comb in appearance or use and that there are judicial decisions and administrative practices holding they are not combs. Defendant relies upon dictionary definitions of the terms "comb" and "currycomb," and claims that the judicial decisions cited by plaintiff are not applicable.

The term "comb" is a broad one and includes many different objects, as is demonstrated by the following definitions:

Webster's New International Dictionary, 1930 and 1953 editions:

comb, n. 1. An instrument consisting of a thin strip, as of metal, bone, wood, etc., with a row of teeth on one or both edges or sides, used for adjusting, cleaning, or confining the hair, or for adornment. 2. A toothed instrument for currying hairy animals, or for cleansing and smoothing their coats; a curry comb. 3. The fleshy crest or carbuncle on the head of the domestic fowl and certain other gallinaceous birds, usually best developed in the male. * * * 4. A thing resembling a cock's comb; * * *. 5. Any of various toothed instruments; * * *. 6. A honeycomb, * * *.

Funk and Wagnalls New Standard Dictionary, 1952 edition:

comb, n. 1. A thin piece of horn, shell, metal, or other material, with one or both edges made into teeth; used for cleaning, dressing, or holding in place the hair: often made in decoration forms. 2. Anything resembling a comb in appearance or use, (1) A curry comb. (2) (a) A flexible-toothed graining-tool * * * 3. (1) The fleshy crest or carbuncle, typically upright and notched or serrated, on the head of a domestic fowl, especially developed in the cock. * * * 4. Anything resembling a fowl's comb in shape and position, as the crest of a hill, wave, or helmet: * * *. 5. (1) A honeycomb, * * *.

The New Century Dictionary, 1946 edition:

comb, n. A toothed instrument, as of bone, metal, etc., for arranging or cleansing the hair, or for keeping it in place; a currycomb; a card for dressing wool, etc.; any comb-like instrument, object, or formation; also the fleshy, more or less serrated excrescence or growth on the head of the domestic fowl; something resembling or suggesting this, as the top or crest of a wave; also, a honeycomb, or any similar mass of cells.

Obviously not all of these were intended by Congress to be included in the provision for combs in paragraph 1537(c).

Cf. United States v. Sheepshearers Mdse. & Comm. Co., 20 CCPA 327, T.D. 46112, and Same v. Same, 23 CCPA 146, T.D. 48009, where combs and cutters for sheepshearing machines were held classifiable as blades for animal clippers.

The term "currycomb" is defined as a kind of comb:

Webster's New International Dictionary, 1930 and 1953 editions:

curry comb, n. A kind of comb having rows of metallic teeth or serrated ridges, used in currying a horse.

Funk and Wagnalls New Standard Dictionary, 1952 edition:

curry comb, n. A comb commonly consisting of a series of upright serrated metallic edges, with a handle, used in grooming horses.

The New Century Dictionary, 1946 edition:

currycomb, n. A comb for currying horses, etc. usually one with rows of metal teeth secured to a plate.

The question, nevertheless, is whether a currycomb is a comb of the kind Congress intended when it used that term in tariff statutes.

The Tariff Act of 1883 in schedule N provided for "combs of all kinds." In a case arising under that act, McCoy v. Hedden, 2 Cir., 38 F. 89, currycombs, assessed as manufactures composed in part of iron, were claimed to be dutiable under the provision for combs. Whether or not currycombs were commercially known as "combs" was a question submitted to a jury, Judge Lacombe charging:

We probably all supposed that we knew what a comb was until we heard the evidence in this case. * * * These tariff acts laying duties upon imports are concerned with the trade and commerce of the country. * * * In using words in these acts, therefore, congress uses them after an examination into the conditions of trade, and with a full knowledge and appreciation of what those words mean in the trade of this country. * * * The plaintiff here contends, in the first place, that he should have been charged duty upon this importation only at the rate laid by the tariff act upon "combs of all kinds." The ordinary implement which we use every morning, made of India-rubber, or horn, or bone, with teeth an inch and an eighth long, and use [sic] to disentangle and part the hair, we all understood to be a comb, and the witnesses called to the stand have testified that as such is it known in trade and commerce. The article of adornment, also, which women wear when they have gathered their hair up into a roll, fastening it by the insertion of an article of ivory, or tortoise shell, or celluloid, or what not, we also understand to be a comb, and the witnesses here testified that in trade and commerce it also is known as such. Now, then, it is for you to determine whether, besides these two kinds of articles, which beyond all dispute are combs, there was, when this tariff act was passed, any other class of articles which was known in the trade and commerce of this country as "combs." If there was such other class, and this particular article of importation was included in it, then your verdict must be for the plaintiff for the amount of the difference between the duty on combs and the duty collected. * * *

A verdict was rendered for the defendant.

In a case arising under the Tariff Act of 1909, it was held that horn combs for combing the manes of horses were dutiable as combs composed wholly of horn. The court said there was no sound basis for a theory that, because these combs were not capable of use by the human family, they were not combs within the meaning of the law. Bartley Bros. & Hall v. United States, 20 Treas. Dec. 1067, Abstract 25685.

In the Tariff Act of 1909 and subsequent acts, Congress has provided for combs of specified materials, designed to be worn on apparel or carried on or about or attached to the person in the jewelry paragraph (paragraph 448,

Tariff Act of 1909; paragraph 356, Tariff Act of 1913; paragraph 1428, Tariff Act of 1922; paragraph 1527(c), Tariff Act of 1930). The tariff acts of 1909, 1913, and 1922 also provided for combs of horn or of horn and metal (paragraphs 463, 368, and 1439, respectively). In the Tariff Act of 1930, however, the provision was changed to combs of whatever material composed, except combs wholly of metal (paragraph 1537 (c), supra). It appears from the hearings held before the act was enacted that the change in language was made in order to cover combs of rubber or plastic. (Tariff Adjustment—1929, Hearings before the Committee on Ways and Means, House of Representatives, 70th Congress, 2nd session, volume 14, pages 7763–7778; Tariff Act of 1929, Hearings before a Subcommittee of the Committee on Finance, United States Senate, 71st Congress, 1st session, volume 15, pages 134–135, 722–730). The types of combs mentioned at the hearings were hair combs for men, women, and children; barbers' combs, combs sold under certain brand names, such as "Ace," "Ajax," and 10-cent combs sold in chain stores.

The Summaries of Tariff Information, 1948, issued after the modification of paragraph 1537(c) by the General Agreement on Tariffs and Trade, T.D. 51802, states (vol. 15, part 7, p. 62):

> * * * Like combs made from other materials, combs of hard rubber are made in different shapes and sizes, such as men's and women's dressing combs, women's toilet combs, barber combs, fine-tooth combs, and water-wave combs.

■ It appears from this history that the type of combs Congress had in mind when it used that term in tariff acts was that covered by the first definition given in dictionaries, as quoted above, that is, a thin toothed instrument for adjusting, cleaning, confining, or arranging the hair, or for adornment. This meaning is also found in the Tariff Schedules of the United States. See headnote 2 to subpart A of part 8 of schedule 7, which provided:

> 2. For the purposes of this subpart, the term "*combs*" means toothed instruments having not over two rows of teeth, for adjusting, cleaning, or confining hair, or for personal adornment.

The Tariff Classification Study, 1960, prepared before the enactment of TSUS states that this definition "conforms to present administrative practice" (schedule 7, p. 379).

The situation here is analogous to that which confronted the court in Ross Products, Inc. v. United States, 46 Cust. Ct. 8, C.D. 2226, where the question was whether "eggcups" were classifiable under a trade agreement provision for "cups." After noting definitions of the term "cup" and of various kinds of cups, including "eggcup" as a cup made to hold an egg, and certain statements in the Digests of Trade Data issued in connection with the trade agreement, the court concluded:

> * * * In fact, an eggcup is not one of the articles which come to mind when the word "cup" is used in connection with ceramic tableware or kitchenware. It is not used to drink from nor is it bowl-shaped nor does it have a saucer as a companion piece, but is ordinarily set upon a plate. It is designed to hold an egg which is generally eaten from the shell. The containing portion is in an elliptical shape to fit the egg rather than in a bowl shape convenient for drinking. It can be identified only by the use of the word or prefix "egg" preceding "cup." It is not known, bought, or sold under any designation other than as an eggcup.

In the instant case, a currycomb is not an article which comes to mind when the term comb is used; it is not shaped like the ordinary comb; it is used for a different purpose and in a different way; it can be identified only by the use of the prefix or word "curry" preceding "comb"; it is sold as a currycomb.

■ We conclude that a currycomb does not fall within the term "comb" as used in paragraph 1537(c) of the Tariff Act of 1930 or that act as modified.

Plaintiff claims that the merchandise is dutiable under paragraph 216, as modified, supra, on the ground that it is composed in part of carbon. The report of the laboratory analysis of the merchandise states:

The sample, a black plastic article, is composed of a polyethylene type synthetic resin containing no ash or organic filler.

The resin does not serve as chief binding agent.

The free carbon content of the sample is less than 2% by weight.

■ Since there is no contradictory evidence, this report establishes that the merchandise is composed in part of carbon, although a distinctly minor part.

In Weather-Rite Sportswear Co., Inc. v. United States, 49 Cust.Ct. 180, Abstract 66910, charcoal grey and black rainwear was assessed with duty under paragraph 216, as modified, supra, as articles composed in part of carbon. It was claimed to be dutiable under paragraph 1558, as modified, as synthetic rubber articles. The court sustained the collector's classification, stating:

Counsel has not elaborated upon the reference to the fact that the charcoal-grey garments contain less than 1 per centum of carbon. Possibly, it was the intent to invoke the *de minimis* rule. If that was the intent, we are of the opinion that the rule is not applicable in this case. Certainly, if the amount of carbon in the articles was sufficient to achieve the purpose which was sought by its inclusion,

i. e., the coloring of the articles, it could not be disregarded as trifling and having no effect upon the classification of the articles. Varsity Watch Co. v. United States, 34 C.C.P.A. (Customs) 155, C.A.D. 359. Compare Canada Dry Ginger Ale, Inc. v. United States, 43 Cust. Ct. 1, C.D. 2094.

In the instant case, there is no evidence as to the function of the carbon in the material, but there is no reason to suppose it was placed there inadvertently. No one claims that the *de minimis* rule is applicable. In regard to plaintiff's claim for classification under paragraph 216, defendant states only that the merchandise is more specifically provided for in paragraph 1537(c). We have, however, ruled out classification under that paragraph. The laboratory report indicates that synthetic resin is not the chief binding agent; therefore, the merchandise is not classifiable under paragraph 1539(b) as a manufacture of a product of which synthetic resin is the chief binding agent. Since it is in fact in part of carbon and is not provided for more specifically in another paragraph of the tariff act, it is properly classifiable under paragraph 216. Claims for classification by similitude are thus inappropriate.

For the reasons stated, we hold that the currycombs involved herein are not "combs" within the meaning of paragraph 1537(c) of the Tariff Act of 1930 or that paragraph as modified, supra, and that they are properly dutiable at 15 per centum ad valorem under paragraph 216 of said tariff act, as modified, as articles composed in part of carbon, wholly or partly manufactured, not specially provided for. To that extent the protest is sustained. As to all other claims, it is overruled. Judgment will be entered accordingly.