(C.D. 3904)

Los Angeles Tile Jobbers, Inc. JL & Co. } v. United States

United States Customs Court, Third Division

(Decided October 20, 1969)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Owen J. Rader*, trial attorney), for the defendant.

LANDIS, Judge: Plaintiffs protest defendant's tariff classification of 382 cartons of small multi-colored glass cubes, attached to a paper backing, imported at Los Angeles. The glass cubes, a product of Italy, were manufactured by Vetrum, a self-described "Factory of Venetian glass mosaics for wall linings and floors". (See, official papers in evidence, R. 30.)

Pointing up the tariff classification issue are the following undisputed facts, testified to of record. Each cube was of a size 20 by 20 millimeters with a riffled back for adhesion to a surface. About 225 cubes, 15 across and 15 down, were attached face down on a square foot of paper backing or matting. (Exhibit 2, R. 11.) The cubes were attached to the paper backing, at the factory, in a pre-arranged mixed medley of colors. The color arrangement followed the specification of the architect's drawings and design for the exterior facing or facade of the Beverly Hills Library. As imported, the cartons containing the glass cubes were also marked to assist the orderly placement of the glass cubes on the facade by workmen, again, following the architect's drawings and design. The design of the completed facade is a decorative mosaic of glass representing a library stack of books, or to state it differently, books standing on a bookshelf. (Collective exhibits 3-A, B, C, D, and E.)

Customs officials assessed the imported glass cubes at 30 per centum ad valorem under TSUS item 546.57, as an art and ornamental glassware article. Plaintiffs claim that the glass cubes should be classified under TSUS item 540.51 as small glass cubes, chiefly used for making mosaics and for other decorative purposes, dutiable at 17 per centum ad valorem. Plaintiffs' claim under TSUS item 540.47, having been abandoned, is dismissed.

The statutory language of the competing tariff classifications is as follows:

Classified (TSUS, schedule 5, part 3, subpart C):

    Subpart C. - Glassware and Other Glass
           Products

    *     *     *     *     *     *     *

    Articles chiefly used in the household or
      elsewhere for preparing, serving, or
      storing food or beverages, or food
      or beverage ingredients; smokers' arti-
      cles, household articles, and art and
      ornamental articles, all the foregoing
      not specially provided for:
        Glassware made of glass containing
          by weight over 24 percent lead
          monoxide:

    *     *     *     *     *     *     *

Glassware, other than the foregoing, decorated with metal flecking, glass pictorial scenes, or glass thread- or ribbon-like effects, any of the foregoing embedded or introduced into the body of the glassware prior to its solidification; millefiori glassware:

\* \* \* \* \* \* \*

Glassware, other than the foregoing, colored prior to solidification, and characterized by random distribution of numerous bubbles, seeds, or stones, throughout the mass of the glass _____ \* \* \*

Glassware, other than the foregoing, pressed and toughened (specially tempered), chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients _____ \* \* \*

Other glassware:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| Valued over $3 each: | | |
| 546.55 | Cut or engraved_____ | \* \* \* |
| 546.57 | Other _____ | 30% ad val. |

Claimed (TSUS, schedule 5, part 3, subpart A):

540.51 Small glass cubes, rectangles, fragments, or chippings, all the foregoing, whether or not attached to a backing, chiefly used for making mosaics and for other decorative purposes_____ 17% ad val.

Defendant defends its classification under TSUS item 546.57 on the theory that what plaintiffs imported was an ornamental article of glass, to wit, a glass mosaic in a knockdown condition. Assuming the article imported was a knockdown mosaic of glass, which we are inclined to doubt, the duty rate under TSUS item 546.57 is limited to ornamental articles which are "glassware". Defendant to the contrary, the superior heading "ornamental articles" is limited by the inferior heading "glassware", under it. TSUS, General Interpretative Rule 10(c)(i). While all articles of glass are generally defined as "glassware", Webster's Third New International Dictionary (1968), we opine that the imported merchandise, whether individual articles of glass or collectively a knockdown mosaic of glass, is not the type of "glassware" classifiable under TSUS item 546.57 and sustain the protest.

The types of "glassware" intended to be classified under the superior heading:

> Articles chiefly used in the household or elsewhere for preparing, serving, or storing food or beverages, or food or beverage ingredients; smokers' articles, household articles, and art and ornamental articles, all the foregoing not specially provided for:

are definitively discussed in the current series, entitled Summaries of Trade and Tariff Information, Prepared in Terms of the Tariff Schedules of the United States (TSUS), released by the United States Tariff Commission on August 8, 1968, as follows:

Description and uses

> This summary covers a great variety of glass articles chiefly used in the household or elsewhere for preparing, serving, or storing food or beverages (or food or beverage ingredients). It also includes other glass household items, smokers' articles, and art and ornamental objects. For the purposes of this summary, the term "household glassware" is used to describe collectively the items herein.
>
> *     *     *     *     *     *     *
>
> Household glassware is produced in a wide range of styles, sizes, colors, qualities, and prices. Commercially, the most important items are tumblers, goblets, other stemware, cups, plates, saucers, miscellaneous tableware, ash trays, fancy perfume bottles,[1] vases, and the art and ornamental pieces.
>
> Most household glassware is made by machine or hand methods that press or blow molten glass into molds of the desired shape. The principal distinction between machine- and hand-made glassware is in the method of delivering the gob (or "gather") of molten glass to the forming molds. In the machine method, the molten glass is fed automatically from a tank, whereas in the hand method, the molten glass is fed manually. Some glassware is still made (principally in Europe) by the traditional offhand method of hand-gathering molten glass and forming it without the use of a mold.
>
> *     *     *     *     *     *     *
>
> Household glassware competed with china, earthenware, and a great variety of like household articles made from plastics, paper, metal, and wood. Art and ornamental household glassware competed with similar art and ornamental objects made from a wide range of materials. [Schedule 5, Volume 4, Pressed and Blown Glassware, pages 83, 84, and 89.]

Similar comment is made in the Summaries of Tariff Information, 1948 (Schedule 2, part 2, pages 37, 41), on paragraphs 218(d) and

---

[1] Empty bottles sold primarily for decorative value. Bottles as commercial containers for perfume are covered in a summary on items 545.11 and 545.17 in this volume.

(f), Tariff Act of 1930, out of which TSUS items 540.51 and 546.57 were carved in the revision and consolidation of the United States tariff laws. (Tariff Classification Study, Schedule 5, pages 127, 141.) Subpart A, *supra*, covers crude glass, glass in standard shapes, and special types of glass, while subpart C, *supra*, covers glassware and miscellaneous articles of glass. (Tariff Classification Study, *supra*, at page 124.) Significantly the only place in schedule 5, glass and glass products, where the term "glassware" is used is in part 3, subpart C, under the superior heading, household articles, smokers' articles, art and ornamental articles denominated "glassware".

> * * * Although * * * [those] articles * * * [were] * * * dutiable in a number of different paragraphs, the glassware is produced in the United States and in most European countries by a well-defined industry, the articles are imported by importers who specialize in * * * [those] types of articles (although some importers also handle chinaware), and the articles are usually sold together in this country through the same marketing channels. * * * [Tariff Classification Study, *supra*, page 141.]

The well-defined industry in the United States "includes establishments primarily engaged in manufacturing glass and glassware, pressed, blown or shaped from glass produced in the same establishment." (Standard Industrial Classification Manual (1957), page 88.) Historically, the history of that well-defined industry in European countries is the history of "glassware" as a minor art form. Touching that history we are told that:

> The French divide glassware into *verrerie*, which includes all hollow-ware and tableware, vessels, vases, containers for liquid merchandise, sophisticated and decorative luxury glass, and articles of everyday use; *verroterie*, glass beads, toys, and jewelery; and *vitrail*, or *vitrage*, window glass. In the history of glass as a minor art it is the first category that is of primary importance and that includes most of the material of beauty and significance. The articles of everyday use rank as highly as the purely ornamental ware, from a design standpoint, and sometimes higher. The extremely specialized and self-consciously esthetic work of the French artist craftsman of the late nineteenth and early twentieth centuries achieved no greater perfection within the dictates of the material than some of today's mass-produced chemical glassware, where form is largely indicated by use. Included in the category of glass as an art expression would be all of the large body of glass that man has created to serve his everyday needs, in simple and elaborate forms, deliberately and accidentally designed:—the articles of his table, drinking glasses, dishes, decanters—bottles and containers, even lamps and lighting fixtures. Also included in this category are the decorative vases, bowls, and figurines, often called "art glass" in recognition of their nonutilitarian, esthetic purpose, and many useful and

decorative novelties that delight the collector today: paper-weights; doorknobs; hand coolers; witch balls; souvenir, political, centennial, and other special commemorative pieces, in shapes for use or ornament. One more classification made important by the twentieth century may be added to these groups: industrial glass. While this is certainly glass for use in its most literal sense, its specialized, commercial, mass-produced nature and its professional forms set it apart from the glass of earlier ages. Such articles as medical and chemical supplies, telephone equipment, and industrial tubing often achieve a unique and spectacular beauty, characteristic of the products of the machine. Implicit in these objects is a new esthetic, the reduction of forms to their simplest elements, which has been adopted for the more personal and traditional types of handmade glass as well, and which has become one of the definitive characteristics of contemporary design. Stained glass and mosaics are not included in this category because the art element enters only when the glass process is completed. [Collier's Encyclopedia, Volume 13, pages 668, 669.]

The most singular characteristic of "glassware" that comes through to us in the materials cited above, is that it is an article made by machine or hand methods that press or blow molten glass into molds of the desired shape. A knockdown mosaic, as defendant calls the article classified, is not a shaped article. A mosaic is a surface decoration made by inlaying small pieces of variously colored glass to form a pattern or picture. Webster's Third New International Dictionary (1968). To call a mosaic "glassware" offends ordinary sensibilities of what "glassware" is. Cf. *Atlas Export Co.* and *F.L. Kraemer & Co.* v. *United States*, 43 CCPA 122, C.A.D. 618 (1956); *Miller Harness Co., Inc.* v. *United States*, 59 Cust. Ct. 1, 8, CD. 3053, 270 F. Supp. 823 (1967).

*R.L. Swearer Company* v. *United States*, 54 Cust. Ct. 24, C.D. 2503 (1965), upon which defendant so strongly relies to support its theory of a knockdown mosaic is not "especially helpful here because examination thereof at once discloses that the conclusions therein reached depended upon the circumstances of * * * [that] case and the language of the statute involved [marble wholly or partly manufactured into monuments, benches, vases, and other articles of which that substance is the component of chief value], none of which seems sufficiently analogous to the facts and the statute[s] here under consideration to be of assistance." *United States* v. *Hannevig*, 10 Ct. Cust. Appls. 124, 129, T.D. 38384 (1920). The tariff specification we are considering is for "glassware", not glass wholly or partly manufactured into an article, or an article of which glass is the component material of chief value. The facts may, in some respects, be analogous to *Swearer* but the classifying statutory language is not.

When we come down to it, the condition in which the merchandise was imported, that is, small glass cubes attached to a backing, neatly fits that tariff specification in TSUS item 540.51. Customs officials were of the same opinion but changed their proposed classification under TSUS item 540.51 to TSUS item 546.57 upon "Final examination after installation at the B.H. Library [Beverly Hills Library]." It "is well settled that the classification of an imported article must rest upon its condition as imported." *United States* v. *Baker Perkins, Inc.*, and *R.F. Downing Co., Inc.*, 46 CCPA 128, 131, C.A.D. 714 (1959). That the glass cubes were attached to a backing in a pre-arranged mixed medley of colors following the architect's design for a mosaic facade cannot affect classification under TSUS item 540.51. Their use for making a mosaic is, after all, the very purpose contemplated by the TSUS item 540.51 language classifying small glass cubes chiefly used for making mosaics and for other decorative purposes. We think that exotic considerations should play no part in classification, indeed, should be resisted, when classifying merchandise that is otherwise clearly within the terms of the classifying tariff language. It will, in the long run, best promote the avowed purposes of TSUS to establish logical terminology, eliminate anomalies and illogical results, and simplify the determination and application of tariff classifications. [Tariff Classification Study, Schedule 5, Preface.]

The weight of the evidence establishes that the glass cubes were selected for color from a Vetrum standard color chart (exhibit 1); that plaintiff is Vetrum's exclusive representative in the United States for these glass cubes; that plaintiff maintains an inventory of colored glass cubes for small installations but can accommodate large installations only by purchase order; that some of the imported glass cubes, namely, those that were to represent the curve of the top of a book, were cut at the factory in Italy to avoid the cost of cutting in the United States; that glass cubes like those imported are used in construction work for color and decorative effect and also for making do-it-yourself mosaics. (Exhibits 4 and 5.) Those are, *prima facie*, the chief uses of the glass cubes. *Fred Bronner Corp.* v. *United States*, 57 Cust. Ct. 428, C.D. 2832 (1966) (concurring opinion).

We find that the imported merchandise, consisting of small glass cubes attached to a backing, is chiefly used for making mosaics and for other decorative purposes and is, therefore, properly dutiable under TSUS item 540.51. Plaintiffs' claim is sustained. The claim under TSUS item 540.47 is dismissed.

Judgment will be entered accordingly.